# Western Pennsylvania National Bank, Appellant, *v*. Peoples Union Bank and Trust Company.

Argued March 20, 1970. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Robert G. Sable,* with him *Baskin, Boreman, Sachs, Gondelman & Craig,* for appellant.

*Lawrence N. Ravick,* with him *James E. Lomeo,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1970:

Stephen and Elizabeth Orlando and a group of people interested in the financial health of the Little Miss Canning Company entered into an agreement with the Western Pennsylvania National Bank in 1966 in which WPNB agreed to lend the corporation substantial sums

of money if the principals involved would agree to be personally liable on the loans. The Orlandos gave WPNB their judgment note to this effect.

A year later, in January of 1967, the Orlandos and several others borrowed $75,000 from the Peoples Union Bank and Trust Company, and each borrower gave Peoples a personal judgment note in that amount. Additionally, the Orlandos orally agreed with Peoples that a 1954 mortgage on their house, which Peoples then was holding and which had an unpaid balance of $2,457, would serve as "side collateral" for their portion of the $75,000 loan. The 1954 mortgage made no provision for future advances and the $2,457 balance of the original loan was paid off a month later, on February 8, 1967.

On October 4, 1967, WPNB entered a $1,610,000 judgment against the Orlandos on their 1967 note. On November 20, 1968, Peoples filed and took judgment on their $75,000 note. And on December 20, 1968, Peoples filed and took judgment on the 1954 mortgage bond.

Peoples quickly moved to sell the Orlandos' home pursuant to an execution issued on the 1954 mortgage bond and WPNB instituted an action in equity seeking to enjoin Peoples' sale of the house.

The trial court decided that a mortgage need not specifically state that it covers future advances in order to do so, that the parties to a mortgage which is silent as to future advances can orally agree that it does cover future advances, that such advances relate back to the date they were made and have priority over all subsequent liens, and that Peoples therefore enjoyed a prior lien on the Orlandos' home. There is no authority on point.

The only question on this appeal is whether a mortgagee whose mortgage contains no provision with respect to future advances has a prior lien on the mort-

gaged property with respect to future advances as against a bona fide lienholder whose lien attaches after the future advances are made. We think not and reverse the decree of the trial court.

We must emphasize that the 1954 mortgage did not, as it could have and as many mortgages do, provide for coverage of future advances. And our reluctance to obliterate the practical distinction between mortgages which specifically provide for the coverage of future advances and those that do not is one of the primary reasons for our decision. When the parties to a contract choose one of two alternative approaches they should not later be heard to say that the rejected approach should be read into their agreement. Accordingly, we refuse to insert into the mortgage agreement a provision which the author thereof failed to include.

A mortgage is a formal document of a specific character, and should be strictly construed. If a mortgage indicates on its face, as this one does, that it covers only a specific advance of funds, then it can secure only the unpaid portions of the original loan, no more. As the original debt is retired the lien of the mortgage is correspondingly reduced.

The trial court stated that WPNB failed to take the "reasonabe and prudent action" of calling Peoples and ascertaining the status of the mortgage, and that this failure was one of the reasons for its rejection of WPNB's suit. The argument is an erroneous nonsequitur. First, Peoples did not have to tell WPNB anything even if they called, and second, the trial court assumes its conclusion by assuming that Peoples could have altered the status of the mortgage to include future advances without altering the recorded mortgage or filing a new document.

It seems more reasonable to assume that Peoples failed to act in a reasonable and prudent fashion when

it neglected to take any of the several steps by which it could have secured its 1967 advance of funds. As is the common practice, Peoples could have either attached a rider to the old mortgage or recorded a new mortgage, instead of relying upon an old mortgage containing no provision for coverage of future advances.

We hold that a mortgage which does not specifically indicate that it covers future advances gives the mortgagee no lien on the mortgaged property other than for the unpaid portion of the original advance, together with any incidental charges properly provided for in the mortgage.

Decree reversed and case remanded for further consistent proceedings.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I join in the opinion of the Court, but deem it desirable to add this further statement of the reasons I think that reversal of the decision of the Court of Common Pleas is proper. While it is apparently true, surprisingly, that there is no authority directly in point on the facts, candor compels acknowledgment that the indications of the prior case law of our Court and the Superior Court point to the priority of the Peoples' lien and the correctness of the lower court's position in upholding it. Without here engaging in a thorough survey, we note that over fifty years ago this Court stated that "it is now established in Pennsylvania that, when a contract for advances or the assumption of future obligations accompanies a mortgage, it is not essential to its validity that the engagement governing the advance be placed upon record, or even expressly referred to in the mortgage. . . .", and that "the lien of payments made under such an agreement relates back

to the date of the mortgage. . . ." *Land Title & Trust Company v. Shoemaker,* 257 Pa. 213, 219, 101 Atl. 335 (1917). To the same effect see *Batten v. Jurist,* 306 Pa. 64, 158 Atl. 557 (1932), and *Moats v. Thompson,* 283 Pa. 313, 129 Atl. 105 (1925). And it has been held, moreover, that the undertaking for future advances does not have to be in writing, and so may be proved by parol evidence: *Wardman v. Iseman,* 99 Pa. Superior Ct. 551 (1930). In *Housing Mortgage Corp. v. Allied Construction, Inc.,* 374 Pa. 312, 97 A. 2d 802 (1953), Chief Justice STERN summarized the law regarding the liens of future advances as follows: "The law is definitely established that an advance made pursuant to a mortgage to secure future advances which the mortgagee was not *obligated* to make, is subordinate in lien to an encumbrance intervening between the giving of the mortgage and the making of the advance, if the advance was made with actual notice or knowledge of the intervening encumbrance; the lien of an advance under such circumstances dates only from the time it was made and not from the time of the creation of the mortgage. In other words, after notice of the existence of a junior lien, the senior mortgagee will not be protected in making further advances under his mortgage unless he is under *a binding obligation* to make such advances: [citations omitted]. It is only when the advance-money mortgagee is contractually obligated to make the advances that their lien relates aback to the date of the mortgage: [citations omitted]." (374 Pa. at 320-2) The limitation emphasized in the *Allied Construction* case, however, is not enough to give priority to the WPNB judgment lien, since it was obtained after the grant of additional credit by Peoples. Thus, in order to prevail, the Peoples' lien would not need to relate back to the date of the mortgage, but only to the date of the new advance. The lower court so held, and this was the legal basis of its decision.

In further support of its decision, the court below observed, "It seems to be common practice in the banking world today to advance money on an original mortgage without undergoing the necessity for preparation of new documents and instruments." No data is given in support of this rather broad statement and there was no evidence to this effect. We would be inclined to think it likely that such a practice would be limited to situations where there was an obligation to make future advances, contracted at the time of taking the mortgage. Whatever may be the informal practice, however, "[g]ood conveyancing practice requires that the contract governing the advances be in writing and at least recited in the mortgage. . .", notwithstanding the decisions above referred to. Ladner, *Conveyancing in Pennsylvania*, §9.34 (3d Ed., 1961). If the original mortgage contains no such reference, and the parties desire, as here, to have it cover new advances, prudence then dictates an amendment to the mortgage or the filing of a supplemental mortgage giving indication of the additional advances contemplated.

The present holding of the court is, I believe, essential to give effect to the purpose of the recording statutes, which have been an integral part of the real estate law in Pennsylvania since colonial times. Act of May 28, 1715, 1 Sm. L. 94, Sec. 8, 21 P.S. 621.[1] A mortgage, in Pennsylvania legal theory, is a defeasible deed. Upon payment of the obligation evidenced or secured thereby, there is an automatic reversion of title to the mortgagor. *Randal v. Jersey Mortgage Investment Co.*, 306 Pa. 1, 158 Atl. 865 (1932); *Bulger v. Wilderman and Pleet*, 101 Pa. Superior Ct. 168 (1931). Thus in the Peoples mortgage in the case at bar, which

---

[1] See, also, Act of April 27, 1927, P. L. 440, §1, 21 P.S. 622, as amended; Act of June 2, 1959, P. L. 452, 21 P.S. 629, as amended; Act of June 28, 1951, P. L. 927, 68 P.S. 601, as amended.

is a typical form of straight mortgage, the following proviso is set forth: "PROVIDED however, that if the said mortgagors pay and perform, according to the condition of said bond, everything to be paid and performed as aforesaid, then the estate hereby conveyed and granted shall become and be void." When, therefore, on February 8, 1967, the Orlandos paid to Peoples the balance due on the original mortgage debt, which was the only obligation referred to in the mortgage, the purpose and provisions of the recording statutes would require a finding that, whatever may be the case as between the mortgagor and mortgagee, as to the rest of the world the mortgage was void. By the same token, the judgment on the mortgage bond entered by Peoples on December 20, 1968 was, in my view, void as against anyone except the Orlandos. It follows that the lien of the WPNB judgment, obtained October 4, 1967, took precedence over the Peoples judgment, and the proposed execution on the latter judgment should be enjoined.

The view here expressed is not new. As long ago as *Irwin v. Tabb,* 17 S. & R. 419, 423 (1828), Chief Justice GIBSON said, by way of dictum, "It must, perhaps, be conceded that a mortgage to secure future advances, which does not contain notice of the agreement is void against creditors generally, because the land is apparently covered for more than it actually owes, . . ." In *Batten v. Jurist, supra,* Chief Justice MAXEY observed (306 Pa. at p. 74): "There is much logic in the argument that the judicial recognition accorded mortgages for unlimited future advances offends the spirit of our modern Recording Acts." Justice MAXEY felt that the matter was one for legislative rather than judicial action. It is not, however, too late or too onerous to require that in order to create an effective lien for future advances there must be some ap-

propriate reference on the public records to the obligation to make such advances. That, as I understand it, is the effect of the court's decision in this case.

Mr. Justice JONES joins in this concurring opinion.

