In re OLD ELECTRALLOY CORPO-RATION, f/k/a and f/d/b/a Electralloy Corporation, Debtor.

FIRST SENECA BANK, Movant,

v.

ELECTRALLOY CORPORATION and Richard W. Roeder, Trustee, Respondents,

and

Central Heating & Plumbing Co., Inc., Jonas Hochstettler and Pennzoil Products Company, Intervening Respondents.

Bankruptcy No. 91–00062E.
Motion No. 91–250.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 11, 1991.

As Amended Nov. 19, 1991.

Guy C. Fustine, Erie, Pa., for trustee.

Richard J. Parks, Mercer, Pa., for First Seneca Bank.

James M. Greenfield, Franklin, Pa., for Central Heating & Plumbing Co., Inc.

David L. Hotchkiss, Meadville, Pa., for Jonas Hochstettler.

James R. Walczak, Erie, Pa., for Pennzoil Products Co.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Background

On January 29, 1991, Electralloy Corporation ("Debtor") filed a voluntary Petition

under Chapter 7 of the Bankruptcy Code. Richard W. Roeder, Esq. was appointed as Chapter 7 Trustee ("Trustee"). The Trustee has operated the Debtor's business and sold it as a going concern, excluding the two parcels of real estate here in question.

The matter presently before the Court is the Motion of First Seneca Bank (the "Bank") for relief from stay and for adequate protection which was filed on February 19, 1991. The Bank holds a first mortgage on each of two parcels of real estate owned by the Debtor and asserts that it is entitled to relief from stay on both properties due to the lack of adequate protection and the lack of equity in the properties.

The Trustee and the Intervening Respondents, Central Heating & Plumbing Co., Inc. ("Central"), Jonas Hochstettler ("Hochstettler") and Pennzoil Products Company ("Pennzoil") oppose the Bank's Motion.

We will address each property separately.

### Seneca Street Property

The Debtor purchased the office building at 15–21 Seneca Street, Oil City, Pennsylvania ("Seneca Street Property" or "Property") from Pennzoil in November 1989. The Bank provided financing for the purchase in the amount of $350,000. On November 17, 1989, Debtor executed a Note and Security Agreement ("Seneca Street Note") and granted the Bank a first mortgage (the "Seneca Street Mortgage") as security for the loan.

The parties disagree on the balance owed the Bank. The Trustee asserts that the balance due under the Seneca Street Note as of January 28, 1991 is $326,666.72. The Bank asserts that the balance due as of February 9, 1991 is $393,069.67 which includes costs and attorney's fees. The Bank further asserts that the Seneca Street Property serves as collateral for all other amounts the Debtor owes the Bank.

The Trustee asserts that he has received offers for the Seneca Street Property which exceed the balance; that there is equity in the Property and that the Property is necessary to conduct business. The Trustee disagrees that the Seneca Street Property serves as security for the payment of other debts.

Pennzoil has intervened in this proceeding solely to protect its right to rent-free occupancy to a portion of the Seneca Street Property. Pennzoil's right to occupy the Seneca Street Property arises as part of the sale agreement between the Debtor and Pennzoil which predates the Bank's interest. There appears to be no disagreement that Pennzoil's rights are superior to the Bank's Mortgage.

The Seneca Street *Note* states that the security interests granted shall secure the Seneca Street Note as well as "(iv) any other indebtedness, liability or obligation of the undersigned to Bank, past, present or future, direct or indirect, absolute or contingent, individual, joint or several, now due or to become due, and whether owed as drawer, maker, endorser, guarantor, surety or otherwise...."

The terms of the Seneca Street *Mortgage* are different; the Mortgage provides that it is "[t]o secure all sums due or which may become due under the Note, and any and all extensions or renewals thereof in whole or part (all of which is hereinafter called the "Indebtedness"), as well as to secure Borrower(s)'s obligations under the Note and Mortgagor's performance under this Mortgage...."

Courts refer to the type of clause in the Note (but omitted from the Mortgage) as a "dragnet clause." Dragnet clauses, designed as catchall clauses to drag in other loans that may or may not exist currently or in the future, are generally disfavored and strictly construed. *In re Shapiro*, 109 B.R. 127 (Bankr.E.D.Pa.1990); *In re Continental Country Club*, 108 B.R. 327 (Bankr.M.D.Fla.1989); and *In re Swanson*, 104 B.R. 1 (Bankr.C.D.Ill.1989).

Prior to the date of execution of the Seneca Street Note and Mortgage, the Bank had lent the Debtor $200,000 to finance the purchase of and improvements to a property located at 607 West First Street, Oil City, Pennsylvania (the "First Street Property"). The Bank obtained a note and

mortgage on the First Street Property in April, 1989 which contained the same clauses; i.e., a dragnet clause in the Note, but not in the Mortgage. Throughout 1990, the Bank made further loans and renewals to the Debtor for renovations to the First Street Property, all of which the Bank asserts are secured by its Seneca Street Mortgage.

The issue is controlled by Pennsylvania law. Pennsylvania law is specific and conclusive. In *Western Pennsylvania National Bank v. Peoples Union Bank and Trust Co.*, 439 Pa. 304, 266 A.2d 773 (1970), the Court, speaking through Justice Roberts, concluded:

We hold that a mortgage which does not specifically indicate that it covers future advances gives the mortgagor no lien on the mortgaged property other than for the unpaid portion of the original advance, together with any incidental charges properly provided for in the mortgage.

439 Pa. at 307, 266 A.2d at 775.

In a concurring opinion, Justice Pomeroy re-emphasized the requirement

that in order to create an effective lien for future advances there must be some appropriate reference on the public records to the obligation to make such advances. That, as I understand it, is the effect of the Court's decision in this case.

439 Pa. at 311–12, 266 A.2d at 777.

There, the holder of an old mortgage, which was paid off, attempted to use it as collateral for a subsequent voluntary loan by oral agreement with the mortgagor. While the mortgage was valid as between the parties, it was invalid as against a mortgage recorded subsequent to the loan.

The Bank here argues that, although the *Mortgage* does not contain a "dragnet clause," the *Note* does, and the two documents must be read together. The Note is not of record. To ascertain the terms of the Note, an interested party would have to contact the Bank. The Bank argues, or implies, that a subsequent lender or lienor should be expected to contact the Bank to

learn the terms of the Note and the extent of the Bank's mortgage lien. Justice Roberts answers this argument at 439 Pa. at 307, 266 A.2d at 775:

The trial court stated that WPNB [the subsequent lienor] failed to take the 'reasonable and prudent action' of calling Peoples [the Bank holding the old mortgage] and ascertaining the status of the mortgage, and that this failure was one of the reasons for its rejection of WPNB's suit. The argument is an erroneous non sequitur. First, Peoples did not have to tell WPNB anything even if they called and second, the trial court assumes its conclusion by assuming that Peoples could have altered the status of the mortgage to include future advances without altering the recorded mortgage or filing a new document.

In the case at Bench, the Bank must rely on the language in the recorded Mortgage. That language does not support the Bank's position.

Although a portion of the amounts due to the Bank, specifically the original $200,000 loan on the First Street Property, were lent to the Debtor prior to execution of the Seneca Street Note and Mortgage, the Seneca Street Note and Mortgage make no reference to the pre-existing obligation. Had the Bank wanted to cross collateralize the Seneca Street loan with the First Street Property, it would have been a simple matter to add to the Seneca Street Note and Mortgage a reference to the First Street Property. All of the prior indebtedness was secured by a separate and distinct note and mortgage on the First Street Property. All of the later indebtedness related to and was intended to be secured by the First Street Property. The Seneca Street Mortgage makes no reference to future advances. Thus, the Mortgage is valid only to the extent of the unpaid balance on the Seneca Street Note. The Seneca Street Property does not serve as collateral for any other debt.

The value of the Seneca Street Property appears to be close to or somewhat in excess of the balance due on the Seneca Street Mortgage. It has been nec-

essary for the Trustee to use the Seneca Street Property while the Debtor's business operations were being sold. On September 9, 1991, the Trustee filed a Motion to Sell the Seneca Street Property for a price of $360,000, subject to higher and better offers.

On May 1, 1991, we ordered the Trustee to turn over to the Bank all rents it collects from tenants in the Seneca Street Property as an adequate protection payment and further ordered that if the Bank does not get paid in full upon the sale of the Seneca Street Property, that the Debtor will be liable to the Bank, as an administrative expense, for an amount equivalent to the fair rental value of the portion of the Seneca Street Property which the Debtor occupies.

It appearing to the Court that the Seneca Street Property will soon be sold and having determined that the mortgage lien on the Seneca Street Property is collateral only for the Seneca Street Note and Mortgage and no other indebtedness, we will allow the parties time to attempt a resolution of the balance due. Should such a resolution prove impossible, the Court shall address the balance and the fair rental value at a later date. The Bank's Motion for relief from stay as to the Seneca Street Property will be denied.

### First Street Property

On April 7, 1989, the Bank agreed to lend the Debtor $200,000 to purchase and improve the First Street Property. The Debtor executed a Note and Security Agreement ("Note and Security Agreement") and granted the Bank a first mortgage (the "April 7, 1989 Mortgage") on the First Street Property which was duly recorded on April 7, 1989 and remains of record in the office of the Recorder of Deeds of Venango County at Mortgage Book 529, page 498. The Note and Security Agreement (but not the April 7, 1989 Mortgage) contains the same dragnet clause as that contained in the Seneca Street Note.

The renovation and improvements proved more costly and took longer to complete than originally anticipated. Throughout 1990, the Bank renewed and/or further extended its lending for renovations and improvements to the First Street Property.

On April 7, 1990, the Note and Security Agreement which matured was renewed and replaced with an identical Note which matured on July 7, 1990. On May 9, 1990, the Bank committed to extend its lending for improvements to the First Street Property to $350,000 from $200,000.

The Bank anticipated consolidating advances made under the May 9, 1990 commitment into a "single time note secured by a mortgage." The Bank made the following advances under the commitment:

| | |
|---|---|
| May 21, 1990 | $18,875.54 |
| June 4, 1990 | 45,054.00 |
| September 10, 1990 | 39,453.20 |
| October 5, 1990 | 15,000.00 |

On the Bank's Business Loan Application prepared in connection with each of the above disbursements, the Bank listed collateral for the disbursement as "None." Upon disbursement of each of the above advances, the Debtor executed an unsecured promissory note.

Also, on August 29, 1990, the May 21, 1990 and the June 4, 1990 Promissory Notes were satisfied by renewal and the execution of a new Promissory Notes.

The final loan transaction between the Debtor and Bank took place on December 11, 1990. At that time, the Debtor and the Bank executed a new Note and Security Agreement in the amount of $350,000 and the Debtor granted the Bank an additional mortgage which the Bank duly recorded in the office of the Recorder of Deeds of Venango County, Mortgage Book No. 544, page 467.

The new Note and Security Agreement contains the same dragnet clause as did the April 7, 1989 Note and Security Agreement, as well as the Seneca Street Note.

The purpose of the December 11, 1990 transaction as stated in the Business Loan Application was to "pay off existing First Seneca Bank notes pertaining to the renovation of 607 West First Street (totalling $313,382.74) plus $36,617.26 additional funds."

Subsequently, the Bank marked all the notes pertaining to the First Street Property dated prior to December 11, 1990 "PAID" and delivered the notes to the Debtor.

The Trustee, as well as intervenors Hochstettler and Central, oppose the Bank's Motion for Relief from the Automatic Stay as to the First Street Property asserting that:

1. All notes related to the First Street Property which were marked "PAID" by the Bank and returned to the Debtor were discharged;

2. The April 7, 1989 Mortgage was left to secure no outstanding obligation and thus must be satisfied;

3. The April 7, 1989 Mortgage secured only the $200,000 Note and Security Agreement delivered contemporaneously and extensions and renewals thereof and did not provide for cross collateralization with the Seneca Street loan or any other loans nor did the April 7, 1989 Mortgage secure future advances;

4. The December 11, 1990 Mortgage constitutes a preference; and

5. The December 11, 1990 transaction constitutes a novation.

Not surprisingly, the Bank disagrees. The Bank asserts that the April 7, 1989 Note and Security Agreement and the April 7, 1989 Mortgage provide security for future advances and provide for cross collateralization with the Seneca Street Property; that the December 11, 1990 transaction was a renewal and consolidation of the prior notes relating to the First Street Property and not intended to satisfy the prior obligations; that the Bank received no greater security for the Debtor's obligations on December 11, 1990 than it already had and thus it received no preference; and that the elements of novation are not present.

■ For many of the same reasons discussed in connection with the Seneca Street Property, we find no cross collateralization here. The transactions between the Bank and the Debtor on the First Street Property were treated as separate and distinct from the Seneca Street Property. Nowhere in the loan documents pertaining to the First Street Property is there a reference to the Seneca Street Property. To the contrary, all the loan documents state that the loans for the purchase and renovations of the First Street Property were to be secured at some point by a mortgage on the First Street Property.

■ The Bank asserts that the April 7, 1989 Mortgage secures all future advances. The April 7, 1989 *Mortgage* states that it is "to secure the payment of all sums due or which may become due under the Note,...." There is no language in the Mortgage indicating that future advances are secured. The Bank, asserts that the Mortgage covers future advances because the April 7, 1989 *Note and Security Agreement*, which the Mortgage secures, provides that the interests granted shall secure the April 7, 1989 Note as well as "(iv) any other indebtedness, liability or obligation of the undersigned to Bank, past, present or future, direct or indirect, absolute or contingent, individual, joint or several, now due or to become due, and whether owed as drawer, maker, endorser, guarantor, surety or otherwise...."

If future advances were to be covered by the April 7, 1989 Mortgage, the Bank should have included a future advances clause on the face of the Mortgage. We thus find that the April 7, 1989 Mortgage provided security for no more than the unpaid portion of the $200,000 lent to the Debtor on April 7, 1989.

■ The Trustee asserts that the December 11, 1990 Note and Security Agreement and Mortgage constituted a novation of the April 7, 1989 Note and Mortgage and the various other notes related to the First Street Property dated prior to December 11, 1990.

■ The elements of a novation are: the displacement and extinction of a prior contract; the substitution of a new contract; sufficient consideration therefor and the consent of the parties. *Yoder v. J.F. Scholes, Inc.*, 404 Pa. 242, 173 A.2d 120 (1961).

The record reflects that the First Street Property is subject to both the April 7, 1989 and the December 11, 1990 Mortgages. There was not an extinguishment of the first loan contract. Nor has the Trustee shown any intent of the parties to enter a novation.

■ The Trustee next argues that by marking the notes dated prior to December 11, 1990 as "PAID" and surrendering them to the Debtor, the Bank discharged the Debtor's obligation evidenced by those instruments and thus the April 7, 1989 Mortgage must be satisfied as it secures no outstanding obligation.

Section 3–605 of the Uniform Commercial Code, 13 Pa.C.S.A. § 3605 (Purdon's, 1984) provides:

§ 3605. Cancellation and renunciation

(a) General rule. The holder of an instrument may even without consideration discharge any party:

(1) in any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the signature of the party by destruction or mutilation, or by striking out the signature of the party; or

(2) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

This section appears to support the Trustee's position that the Debtor's obligations were discharged when the Bank marked the pre-December 11, 1990 notes paid and returned them to the Debtor. The Third Circuit has stated, however, that the existence of clerical errors or other mistakes makes subjective intent a factor in the analysis. *Peterson v. Crown Financial Corp.*, 661 F.2d 287 (3d Cir.1981). The uncontradicted testimony of the Bank's representative at trial is that clerical errors were made in marking the old notes "PAID." It is admitted that no payment was made to the Bank which would have caused the prior notes to be marked "PAID." We, therefore, find credible the testimony of the Bank's officer that the notes were marked "PAID" by mistake and

thus the Debtor's obligations under the April 7, 1989 Mortgage are not discharged.

■ The Trustee next asserts that the December 11, 1990 Mortgage constitutes a preference under § 547 of the Bankruptcy Code.

11 U.S.C. § 547(b) provides:

(b) ... the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under Chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

It is clear that the December 11, 1990 Mortgage was

(1) to or for the benefit of a creditor;

(2) for an antecedent debt;

(3) made while the debtor was insolvent; and

(4) made within 90 days before the petition.

Thus, the December 11, 1990 Mortgage is a preference to the extent it enables the Bank to receive more than it would had the Mortgage not been executed. The December 11, 1990 Mortgage is an attempt to secure additional obligations incurred between May—December, 1990. Thus, the December 11, 1990 Mortgage is a preference to the extent it attempts to secure an amount greater than the remaining balance of the April 7, 1989 Mortgage, except that

**712**

under § 547(c), the trustee may not avoid a transfer to the extent that such transfer was a contemporaneous exchange.

On December 11, 1990, the Bank provided the Debtor with new funds in the amount of $36,617.26. Therefore, the December 11, 1990 Mortgage is a preference and invalid except to the extent of $36,617.26.

 To summarize, the Bank has a valid first mortgage on the First Street Property dated April 7, 1989, the principal balance of which is $197,500 as well as a valid December 11, 1990 Mortgage to the extent that new money was advanced, $36,617.26. The parties have stipulated that the value of the First Street Property is $150,000. The amount of the secured debt far exceeds the value. There is no equity in the First Street Property and relief from stay will be granted.

In addition to the Bank's secured interests, Central and Hochstettler hold mechanic's liens against the First Street Property.

Central and Hochstettler commenced work on the First Street Property on a date subsequent to the recording of the Bank's April 7, 1989 mortgage. Their mechanic's liens are therefore inferior to the lien of the April 7, 1989 mortgage and of no value.

ORDER

This 11th day of October, 1991, in accordance with the accompanying Opinion, the Court finds and it is ORDERED as follows:

1. The $200,000 mortgage in favor of First Seneca Bank dated April 7, 1989 on the premises at 607 West First Street, Oil City, Pennsylvania, recorded on April 7, 1989 at Venango County Mortgage Book 529, page 498 is valid and enforceable to the extent of $197,500 plus interest from December 11, 1990 together with applicable attorney's fees and costs.

2. The fair market value of the premises at 607 West First Street, Oil City, Pennsylvania, is $150,000.

3. The mechanic's lien claims of Central Heating & Plumbing Co., Inc. and Jonas

Hochstettler are inferior to the lien of the April 7, 1989 mortgage of First Seneca Bank and of no value.

4. The automatic stay is terminated as it affects the interest of First Seneca Bank in real property known as 607 West First Street, Oil City, Pennsylvania.

5. First Seneca Bank's Motion for Relief from Stay is denied as it affects real property known as 15–21 Seneca Street, Oil City, Pennsylvania.