**In re John M. MORAN, Debtor.**

**Bankruptcy No. 92–17525–JNF.**

United States Bankruptcy Court,
D. Massachusetts.

Jan. 24, 1994.

John O. Desmond, Framingham, MA, for Chapter 7 trustee.

Gordon N. Schultz, Boston, MA, for Michael Dicarlo, objecting creditor.

Richard R. Stanley, Westborough, MA, and James M. Fox, Boston, MA, for F.D.I.C., objecting creditor.

### MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

On September 13, 1993, the Chapter 7 Trustee (the "Trustee") of the estate of John M. Moran ("Moran" or the "Debtor") filed a Notice of Intended Public Sale with respect to real property located at 61–63 Savin Hill Avenue, Dorchester, Massachusetts in which the Debtor has an interest. The notice informed creditors that objections to the sale had to be filed with the Court in writing on or before October 6, 1993 and that if objections were filed the Court would conduct a hearing on October 12, 1993. Michael Dicarlo, individually and as Trustee of the 61–63 Savin Hill Avenue Realty Trust ("Dicarlo"), filed an objection to the sale, as did the Federal Deposit Insurance Corporation (the "FDIC"), as liquidating agent/receiver for the Olympic Bank and Trust (the "Bank").

The FDIC objected on the grounds that it had obtained relief from the automatic stay and had started foreclosure proceedings with respect to the property and that sale of the Debtor's interest in the property by the Trustee would be detrimental to it. Dicarlo, as the holder of a 50% beneficial interest in the real estate trust that owns the property (the Debtor owns the other 50% beneficial interest), objected on the ground that the validity, extent and priority of the Bank's mortgage must be determined prior to the

sale. At the October 12, 1993 hearing, the Court agreed with the position espoused by Dicarlo and ordered the filing of briefs to address the issue of whether the Debtor's obligations to the FDIC were cross-collateralized by a note and mortgage dated October 20, 1988. The Court dispensed with the need for the filing of an adversary proceeding, *see* Fed.R.Bankr.P. 7001, and continued generally the Trustee's Motion to Sell Property at Public Sale Free and Clear of All Claims, Liens and Encumbrances Asserted by Any Party.

## II. THE ISSUE

The issue raised by the parties is whether the mortgage now held by the FDIC on the Savin Hill property secures debts other than the debt in the original principal amount of $50,000 evidenced by a contemporaneous note. Determination of the issues is crucial because, as the Trustee recognizes in his memorandum, if the mortgage secures obligations other than the amount originally secured in the note, the FDIC's secured debt would exceed the value of the property and there would be no benefit to the estate from a sale.

## III. FACTS

There do not appear to be any disputes as to the relevant facts. On October 20, 1988, the Debtor and Dicarlo individually and as Trustees of the Savin Hill Realty Trust executed a one-year note and mortgage in favor of the Bank. The note, which was amended on November 29, 1989 to extend the term until October 20, 1990, provides the following in relevant part:

*All property* (including tangible, intangible, real, personal and other property of every kind, nature and description) and all other collateral and security *delivered* to or held by the Holder *as security for the payment of this Note or the payment of any other notes or the performance of any other obligations or liabilities to the Holder of any party liable hereon,* either as maker, endorser, guarantor, surety or otherwise, or for which any such party is liable to the Holder, and all guaranties and endorsements hereof *shall be deemed* (insofar as it

is legally possible to do so by agreement of the undersigned) *to be security for any guaranties and endorsements assuring the payment of this Note and all other said notes and the performance of all of said obligations and liabilities of all of such parties liable hereon to the Holder, whether now existing or hereafter arising, due or to become due, absolute or contingent, joint or several, primary or secondary.* Any default under this Note or in the performance and observance of the provisions of any mortgage, security agreement, or other agreement pertaining thereto shall be deemed a default on all other notes, obligations and liabilities of all parties liable hereon to the Holder, whether now existing or hereafter arising, and any default on any other note, obligation or liability of any party liable hereon to the Holder, whether now existing or hereafter arising, shall also be deemed a default under this Note.

(Emphasis supplied). The mortgage provides that the following:

This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on October 20, 1989. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of the Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.

Additionally, the parties do not dispute the following: 1) the Bank properly recorded the October 20, 1988 mortgage; 2) at the time of the commencement of the Debtor's Chapter 7 case on July 23, 1992 the FDIC was owed $41,669 with respect to the $50,000 note; 3) the value of the Savin Hill property is approximately $160,000 as set forth in an appraisal obtained by the FDIC, and there is equity in the property; and 4) Moran was a director of the Bank and drafted the note.

The mortgage was a standard form mortgage used for residential mortgages.

In the FDIC's memorandum, it listed obligations that Moran allegedly incurred both before and after the October 20, 1988 transaction and referred the Court to its motion for relief from the automatic stay for more details. In its motion for relief from the automatic stay, the FDIC indicated that the Debtor owns a 50% beneficial interest in two realty trusts, the Jake Realty Trust and the Bradford Holding Trust, and a one-third interest in another trust, the Von Hilleran Realty Trust. In 1985, E.M. Longo, trustee of all three trusts, borrowed approximately $92,000 on behalf of the Jake Realty Trust secured by a first mortgage on a condominium in Brighton, Massachusetts, which was appraised in 1992 at $75,000. In 1987, Longo borrowed approximately $600,000 on behalf of the Bradford Holding Trust secured by parcels of real estate in Haverhill and Groveland, Massachusetts. The latter note was bifurcated and Moran, individually, executed, on December 16, 1990, a note in the amount of $231,243.13. The properties securing this obligation were appraised in 1992 at $125,000. In 1986, Longo borrowed $150,000 on behalf of the Von Hallern Realty Trust secured by a first mortgage on property in Dorchester, Massachusetts, which was appraised in 1993 at $20,000.

From the motion for relief from stay, it appears that the Debtor was not obligated to the Bank in either an individual capacity or as a trustee of one of the three real estate trusts in which he has an interest at the time of the October 20, 1988 transaction. His only other direct liability to the Bank arose after the October 20, 1988 note was due on October 20, 1990.

## IV. THE POSITIONS OF THE PARTIES

### A. The Trustee

The Trustee initially argues that the language of the mortgage determines the extent of the obligations secured by the mortgage. He contends that the mortgage lacks language that would satisfy the requirements of Mass.Gen.Laws Ann. ch. 183, § 28B (West 1991)[1] for open end mortgages, although it does contain language consistent with section 28A of chapter 183, the so-called flexible mortgage provision.[2] According to the Trustee, absent plain language in the mortgage to put the world on notice of an encumbrance on the property that may exceed $50,000 or the recordation of the note, the maximum obligation that the mortgage could se-

---

1. Section 28B provides in relevant part:

   Any sum which shall be lent by the mortgagee to the mortgagor at any time after the recording of an open-end mortgage that secures such sum shall be equally secured with and have the same priority as would any such sum disbursed as of the time of the recording of such mortgage. As used in this section an "open-end mortgage" shall mean a mortgage of real estate the terms of which provide that it secures a sum lent by the mortgagee to the mortgagor from time to time pursuant to an open-end credit plan as defined in section one of chapter one hundred and forty D. In the event of any conflict between this section and chapter two hundred and fifty-four or any other provision of law, the provisions of this section shall control. Notwithstanding the foregoing, the priority afforded under this section shall apply only to (i) the principal sum so loaned, provided, however, that in the case of an open-end mortgage recorded after the effective date of this section, such priority shall apply only to so much of such principal sum as does not exceed the amount specified in such mortgage as the maximum sum intended to be secured thereby; (ii) interest on the principal amount to which such priority applies; and

   (iii) all charges and fees other than principal and interest that are secured by such mortgage. In the event that an open-end mortgage is amended to increase the amount intended to be secured thereby, such mortgage shall be deemed to have been recorded, with respect only to the amount of such increase, at the time such amendment is recorded....

   Mass.Gen.Laws Ann. ch. 183, § 28B (West 1991).

2. Section 28A provides in relevant part:

   Any sum or sums which shall be loaned by the mortgagee to the mortgagor at any time after. the recording of any mortgage of real estate, to be expended for paying for repairs, improvements or replacements to, fuel for, or for taxes or other municipal liens, charges or assessments on, the mortgaged premises, shall be equally secured with and have the same priority as the original indebtedness, to the extent that the aggregate amount outstanding at any one time when added to the balance due on the original indebtedness shall not exceed the amount originally secured by the mortgage. The provisions of this section shall apply to all forms of mortgages on real estate....

   Mass.Gen.Laws Ann. ch. 183, § 28A (West 1991).

cure is $50,000, since neither a bona fide purchaser for value nor a lien creditor would have notice of the terms of the note. Consequently, the Trustee argues that as a lien creditor/bona fide purchaser pursuant to 11 U.S.C. § 544(a)(1) and (3)[3] he is not bound by the terms of the note.

Finally, the Trustee argues that all the elements of 11 U.S.C. § 363(h), which provides for the sale of the estate's interest in property as well as the interest of co-owners upon satisfaction of certain conditions, have been met and that the benefit to the estate from a sale of the property exceeds the detriment to Dicarlo.

### B. Dicarlo

Dicarlo argues that the Court's first task is to determine whether the language used in the note is ambiguous. He indicates that to make this determination the Court may examine the face of the document in which the disputed language is present as well as all documents executed concurrently. Dicarlo maintains that the language of the note does not create cross-collateralization of the mortgage and thus both he and the Trustee are entitled to the equity in the property.

Secondly, Dicarlo argues that, even when the terms of the mortgage are read together with the terms of the note, the mortgage clearly limits the security to the obligation under the note, as there is no "dragnet clause" in the mortgage. Thus, Dicarlo maintains that the note and mortgage must be construed so that they do not contradict one another. Accordingly, in his view, if the note is construed as creating a cross-collateral obligation it would contradict the express terms of the mortgage and would effectively modify and amend the mortgage. Moreover, Dicarlo insists that the mortgage should car-

ry more weight than the note since it is the instrument which contains the grant of security.

Finally, Dicarlo, relying upon *Everett Credit Union v. Allied Ambulance Servs.*, 12 Mass.App. 343, 424 N.E.2d 1142 (1981), and *Financial Acceptance Corp. v. Garvey*, 6 Mass.App.Ct. 610, 380 N.E.2d 1332 (1978), maintains that the extent of the security must be determined by the language utilized in the mortgage. In *Garvey*, the court stated: "[t]he guiding principal in construction of the dragnet clause is the determination of the intent of the parties in view of the particular circumstances and *the language employed in the mortgage.*" 6 Mass.App.Ct. at 612, 380 N.E.2d 1332 (emphasis supplied).

Dicarlo also relies on the severability provision of the mortgage which provides that if either the note or mortgage conflicts with applicable law such conflicting provision shall not effect the remaining provisions of the note and mortgage and the provisions may be declared to be severable. Thus Dicarlo maintains that construing the note in a manner favorable to the FDIC would violate traditional principles of contract construction.

### C. The FDIC

The FDIC maintains that the mortgage incorporates the general dragnet clause contained in the note in its introductory provisions referencing the inclusion of all elements of the note into the mortgage. In its view, the note contains cross-collateralization provisions and the mortgage contains a dragnet clause. The FDIC also argues that the Massachusetts courts have found that mortgage provisions drawing in future, unspecified obligations are valid. Alternatively, the FDIC maintains that the note contains cross-collat-

---

**3.** Section 544(a) provides in relevant part:
(a) the trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple

contract could have obtained such a judicial lien, whether or not such a creditor exists;
. . .
(3) a bona fide purchase of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists and has perfected such transfer.
11 U.S.C. § 544(a)(1), (3).

eralization to the extent that any promissory notes were in existence on October 20, 1988. In this regard, the FDIC relies upon *Bennett v. Worcester Co. Nat'l Bank*, 350 Mass. 64, 213 N.E.2d 254 (1966), and *Robert C. Roy Agency, Inc. v. Sun First Nat'l Bank*, 468 So.2d 399 (D.C.App.Fla.1985), for the proposition that the terms of promissory notes can be incorporated into mortgages even when the scope of the liability incurred includes unspecified sums.

The FDIC emphasizes that the parties to the note and mortgage were sophisticated business people, that Moran was a director of the Bank, and that Moran drafted the documents now at issue. The FDIC maintains that the parties intended that the mortgage was to secure past and future obligation of Moran and Dicarlo to the Bank.

## V. DISCUSSION

■ In *Bielanski v. Westfield Savings Bank*, 313 Mass. 577, 580, 48 N.E.2d 627 (1943), the court, in considering a note, mortgage and rent agreement all executed simultaneously as parts of the same transaction, stated that "[t]he intent of the parties is to be ascertained by construing together these three instruments as comprising a single plan by which the defendant was to be paid." Accordingly, in the context of this case, the note and mortgage executed on October 20, 1988 must be read together. The Court finds that, by the terms of the note, the Debtor intended the mortgage to secure the October 20, 1988 note as well as other obligations of the makers "whether now existing or hereafter arising, due or to become due, absolute or contingent, joint or several, primary or secondary." However, the mortgage, lacking its own dragnet provision or any reference to obligations other than the $50,000 debt evidenced by the contemporaneous note, failed to secure future obligations.

While the language employed by the Debtor in the October 20, 1988 note is not a paradigm of good draftsmanship, the gist of the paragraph in dispute can be paraphrased as follows:

All property and all collateral delivered to or held by the Bank as security for the payment of the October 20, 1988 note or the payment of any other notes executed by Moran or Dicarlo shall be security for any guaranties or endorsements assuring the payment of the October 20, 1988 note and all other notes of Moran or Dicarlo to the Bank whether now existing or hereafter arising.

The Court finds that this language indicates an intention to collateralize any and all obligations that the Debtor might have to the Bank. Even assuming that the language could be construed as ambiguous, the same issue is before the Court, namely whether the mortgage itself, which is not ambiguous, effectuated an intention to secure future advances, since the mortgage refers to only the $50,000 debt evidenced by the October 20, 1988 note. Although the mortgage refers to the repayment of the debt evidenced by the note ($50,000), the note referred to, but did not set forth the dates or amounts of, other obligations, presumably because none existed. Additionally, as Dicarlo recognized in his memorandum, the disputed paragraph does not contain a covenant or agreement that could be secured by the mortgage—it did not require the borrower to do anything. Rather the disputed paragraph is phrased as a statement only, and the mortgage fails to refer specifically to this provision. Accordingly, this Court finds that the language of the mortgage is controlling and that the mortgage was intended to provide security for the repayment of $50,000 only as the mortgage itself does not contain any dragnet clause or grant of additional collateral.

This conclusion is consistent with the Court's reading of Mass.Gen.Laws Ann. ch. 183, § 28B. Although there are no cases interpreting this statute, its plain meaning indicates that an open-end mortgage that secures monies lent after its recording must have terms "which provide that it secures a sum lent by the mortgagee to the mortgagor...." The mortgage in the instant case has no such terms.

The FDIC relies upon the case of *Bennett v. Worcester Co. Nat'l Bank*, 350 Mass. 64, 213 N.E.2d 254 (1966). In that case, the mortgagor executed a first mortgage to secure a contemporaneous note. The mortgage also contained language indicating that

it was intended to secure " 'the performance of all the terms and conditions of a certain Construction Loan Agreement of even date.' " 350 Mass. at 65, 213 N.E.2d 254. The parties to the loan documents agreed that any breach of the Construction Loan Agreement would constitute a breach of the mortgage. The Construction Loan Agreement contained a number of provisions, one of which was that the mortgagor had to complete construction of a shopping plaza within a reasonable time. The mortgagor agreed that in the event that the plaza was not completed in a reasonable time, the lender had the right, but not the obligation, to take immediate possession of the premises and complete the building, charging all money expended against any payments not already advanced. When the developer failed to complete the project, the lender, after rejecting a bid at a foreclosure sale it advertised, completed the project and subsequently sold the property, suffering a net loss. The second mortgagee on the property argued that the lender's recovery was limited to the amount of money advanced prior to breach of the Construction Loan Agreement. The court disagreed, stating that the mortgagee's failure to complete the project "violated a covenant, the performance of which was secured by the mortgage." *Id.* at 67, 213 N.E.2d 254. The mortgagee also argued that the lender's recovery should be limited to the original indebtedness under the note. The court disagreed again, stating that "[t]he language of the mortgage makes clear that it was executed to secure not only repayment of the $155,000 note, but also the performance of all the terms of the construction loan agreement." *Id.* Finally, the court rejected the second mortgagee's reliance upon Mass.Gen.Laws ch. 183, § 28A, ruling that "[i]n so far as this statute limits the amount of indebtedness which is secured under a mortgage, it deals only with loans to the mortgagor which might otherwise not be secured by the terms of the mortgage." *Id.*

The *Bennett* case is distinguishable from this case because the mortgage in the instant case does not specifically state that it was intended to secure any obligation other than the $50,000 note. Indeed, the mortgage document is a standard form of mortgage clearly identified at the bottom as "MASSACHU-SETTS–Single Family–FNMA/FHLMC UNIFORM INSTRUMENT." Although the note indicates that all security granted to the Bank to secure the note would also secure all other obligations of Moran to the Bank and must be construed against its drafter, Moran, the mortgage itself was not drafted by Moran and lacks language to secure obligations in excess of $50,000. Since Moran and Dicarlo attested in the note that the property described in the mortgage was not used or intended to be used by them as a dwelling or a home and that the loan proceeds would be used only for commercial and business purposes, the Bank's use of a standard form residential mortgage explains the current impasse between the parties and precludes a tortured construction of the mortgage to include future advances.

The Court is also guided by it decision of even date, *Chiodetti v. First Lake Corp. (In re Chiodetti)*, 163 B.R. 6 (Bankr.D.Mass. 1994). In that case, this Court also refused to enforce a dragnet clause in a 1988 note where the 1987 mortgage referred to a note of even date, relying upon *First Seneca Bank v. Electralloy Corp. (In re Electralloy Corp.)*, 132 B.R. 705 (Bankr.W.D.Pa.1991). In the Pennsylvania case, the court stated the following:

> a mortgage which does not specifically indicate that it covers future advances gives the mortgagor [sic] no lien on the mortgaged property other than for the unpaid portion of the original advance, together with any incidental charges properly provided for in the mortgage.

132 B.R. at 708, *quoting Western Pennsylvania Nat'l Bank v. Peoples Union Bank and Trust Co.*, 439 Pa. 304, 307, 266 A.2d 773, 775 (1970).

Likewise, the leading Massachusetts cases regarding dragnet clauses, *Everett Credit Union v. Allied Ambulance Servs., Inc.*, 12 Mass.App.Ct. 343, 424 N.E.2d 1142 (1981), and *Financial Acceptance Corp. v. Garvey*, 6 Mass.App.Ct. 610, 380 N.E.2d 1332 (1978), are distinguishable because in each of these cases the mortgages in question contained specific dragnet provisions. However, both

cases emphasize the importance of the language used in the mortgage to determine the extent of the security. In this case, the language of the mortgage cannot be stretched to include the dragnet or cross-collateralization provision contained in the note.

## VI. CONCLUSION

In view of the foregoing, the Court hereby determines that the FDIC's lien is limited to the balance due under the October 20, 1988 note. Accordingly, the Court overrules the objection of the FDIC to the Trustee's Motion to Sell Property at Public Sale and his Notice of Intended Private Sale and allows the Trustee's Motion.[4]

John Boyajian, Boyajian, Harrington & Richardson, Providence, RI, for debtor.

Charles A. Lovell, Partridge, Snow & Hahn, Providence, RI, for Gruhn, Chambliss & Bahner.

Edward J. Bertozzi, Jr., Edwards & Angell, Providence, RI, for Chapter 11 trustee.

Office of U.S. Trustee, Sheryl Serreze, Providence, RI.

4. The Court need not address the Trustee's alternative arguments under 11 U.S.C. § 544. Moreover, it appears that the Trustee's contentions that sale of the property is appropriate under 11 U.S.C. § 363(h) are undisputed. Since the FDIC

obtained relief from the automatic stay, it would appear that all parties would benefit from cooperating to maximize the proceeds from the sale of the property either by the Bank at foreclosure or by the Trustee at public auction.