**In re Thomas G. CHIODETTI and Karen A. McDonald, Debtors.**

**Thomas G. CHIODETTI and Karen A. McDonald, Plaintiffs,**

v.

**FIRST LAKE CORPORATION, a/k/a Diversified Financial Systems, Inc., Defendant.**

**Bankruptcy Nos. 92–20589–JNF, 92–22554–JNF. Adv. No. 93–1263.**

United States Bankruptcy Court, D. Massachusetts.

Jan. 24, 1994.

Anne J. White, Boston, MA, for debtors/plaintiffs.

Rickel Shuster, Newton, MA, for defendant.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

Thomas G. Chiodetti and Karen A. McDonald (the "Debtors" or the "Plaintiffs") commenced the above-captioned adversary proceeding on April 27, 1993 by filing a three

count complaint against First Lake Corporation, a/k/a Diversified Financial Systems, Inc. (the "Defendant").[1] In count I of their complaint, the Plaintiffs allege the following: 1) that the Defendant filed a proof of claim as a secured creditor in the amount of $77,501.70 in their consolidated cases; 2) that in November or early December of 1987, Karen A. McDonald ("McDonald") individually met with a loan officer of Milford Savings Bank (the "Bank") seeking a Small Business Administration ("SBA") loan in the amount of $100,000; 3) that based upon McDonald's individual application, the Bank on December 4, 1987 granted her a $50,000 personal loan evidenced by a promissory note, while agreeing to process the SBA loan; 4) that the Bank demanded that McDonald's husband, Thomas G. Chiodetti ("Chiodetti"), execute a mortgage on their primary residence, which he and his spouse did on December 11, 1987; 5) that in May of 1988, the Bank insisted that Chiodetti and McDonald sign a new promissory note, which they did on May 12, 1988; and 6) that neither McDonald nor Chiodetti executed a note on December 11, 1987. Based upon these allegations, the Plaintiffs seek a determination that the Defendant's claim is an unsecured claim.

The Defendant answered the complaint. On September 10, 1993, the Plaintiffs filed a Motion for Partial Summary Judgment with respect to count I of their complaint. The Court heard the motion and took the issues raised by it under advisement on October 29, 1993. In an earlier ruling, on April 16, 1993, the Court ordered that the Defendant's motion for relief from the automatic stay be continued generally and decided in the context of the present adversary proceeding.

## II. THE MOTION FOR PARTIAL SUMMARY JUDGMENT

The Plaintiffs contend that the Defendant's third mortgage on their residence located at

154 Beach Street, Franklin, Massachusetts is defective and that the May 12, 1988 note (signed by McDonald individually) that the Defendant seeks to enforce by way of a motion for relief from the automatic stay is not secured by the December 11, 1987 mortgage.[2] In their motion, they reiterate the allegations contained in count I of their complaint adding the following: 1) that Chiodetti and McDonald were unrepresented by counsel during their transactions with the Bank; 2) that Chiodetti did not understand or remember executing the December 11, 1987 mortgage; 3) in early 1988, the Bank lent McDonald an additional $15,000 and that it canceled the December 4, 1987 note for $50,000 by returning the original signed note to the Plaintiffs; 4) that on May 12, 1988, Chiodetti and McDonald signed a note in the amount of $65,000 and that on the same day McDonald also signed a note in the amount of $65,000.[3] The Debtors also point out that the mortgage of December 11, 1987 provides that it secures a note of even date, there is no note signed by either Chiodetti or McDonald on December 11, 1987, and the mortgage makes no reference to the dollar amount of any loan, the rate of interest of the loan, the period of the loan or any of the terms of the loan.

## III. FACTS

From the Debtors' motion and the Defendant's response, the following documents provide evidence of the intention of the parties:

12/4/87 Security Agreement signed by McDonald, individually

–no monetary amount of note "of even date" specified

–dragnet clause present

–no description of real estate included

---

1. First Lake Corporation holds a valid assignment from the Federal Deposit Insurance Corporation as Receiver of Milford Savings Bank.

2. According to the Debtors' schedules, their residence is encumbered by a first mortgage to Natick Federal Savings Bank in the amount of $50,111.67; a second mortgage to Fleet Bank in the amount of $10,620.61; the disputed third mortgage to the Defendant; and federal tax liens

recorded on February 8, 1990 and March 22, 1991, covering tax liabilities for the periods ending December 31, 1989 and September 30, 1989 in the approximate total amount of $50,000.

3. The note signed by McDonald individually contains the name of her business, Action Personnel, Inc., and the typed words "Karen McDonald, President" above her signature.

12/4/87 $50,000 Note signed by McDonald individually

–dragnet clause present

–reference to Security Agreement of even date and real estate mortgage

12/11/87 Mortgage signed by McDonald and Chiodetti

?/?/87 Pledge Agreement (undated) signed by McDonald and Chiodetti

–reference to real estate mortgage

–dragnet clause present

5/12/88 $65,000 Note signed by McDonald

–dragnet clause present

–reference to Security Agreement of· 12/4/87 and real estate mortgage

5/12/88 $65,000 Note signed by McDonald and Chiodetti

–dragnet clause present

–reference to Security Agreement of 12/4/87 and real estate mortgage

5/12/88 Personal Guarantee signed by McDonald

–unlimited amount

–dragnet clause present

The December 11, 1987 mortgage, which was duly recorded, provides in pertinent part the following:

> We, THOMAS G. CHIODETTI and KAREN A. MCDONALD, both of Franklin, Norfolk County, Massachusetts, for consideration paid, grant to the Milford Savings Bank ... with mortgage covenants, *to secure the payment of Promissory Notes, Personal Guarantees and other evidence of indebtedness, together with interest as provided in said Notes, Guarantees and other instruments as provided in a note of even date and also to secure the performance of all agreements and covenants contained herein and in the note secured hereby:*— Two certain parcels of land ... described as follows....

(emphasis supplied). The May 12, 1988 note in the amount of $65,000 executed by McDonald provided the following:

> [t]he maker has deposited with said bank as COLLATERAL SECURITY for *payment of this or any other direct or indirect liability or liabilities of __ [blank] __ to said bank due or to become due, or that maybe hereafter contracted [sic].* The following property, viz.: secured by security agreement dated 12/4/87 and mortgage on property located at 154 Beach St., Franklin, Ma. Rate to float 2.00 points over the Bank's base lending rate. Interest payable monthly on sums advanced. [sic] for *the payment of this and any other liability, direct or indirect, joint or several, of the undersigned, already existing or which may hereafter arise,* in favor of said holder or holders, the property listed on the back hereof, with power, on the non-payment of this or any other such liability, to sell and transfer said property....

(emphasis supplied). The $50,000 note executed by McDonald on December 4, 1987 is virtually identical to the later note. Likewise, the pledge agreement contains language indicating that the mortgage was intended to be security for "the prompt payment and due performance of any and all liabilities or obligations (direct or indirect, absolute or contingent, secured or unsecured, due or to become due, now existing or hereafter arising) of Karen McDonald d/b/a Action Personnel...." The Defendant does not contend that the pledge agreement was recorded. Nor does the Defendant dispute the Plaintiffs' assertion that the 1987 note(s) were returned to them.

## IV. THE POSITIONS OF THE PARTIES

### A. The Debtors

The Debtors argue that the plain meaning of the language in the mortgage precludes the securing of future or after-acquired notes. Noting that loan documents can properly be characterized as contracts of adhesion, *Chase Comm. Corp. v. Owen*, 32 Mass. App.Ct. 248, 253, 588 N.E.2d 705 (1992), they also argue that the mortgage, which was drafted by the Bank must be construed strictly against the Defendant.

The Debtors also note that in December of 1987, McDonald anticipated securing a Small Business Administration loan and did not anticipate the need for any future advances from the Bank. (See McDonald Affidavit at ¶ 8). Accordingly, they conclude that when

the December 4, 1987 note was returned to them, the mortgage became unenforceable.

Finally, the Debtors argue that the description of the obligation in the mortgage is insufficient to put subsequent creditors on notice as there was nothing whatsoever in the mortgage to indicate that it was intended to cover future and after-acquired notes. They add that in this case, reformation of the mortgage due to mutual mistake is unwarranted as it would prejudice the rights of a third party, namely the Internal Revenue Service.

### B. The Defendant

The Defendant relies upon the provisions of the mortgage, as well as the security agreement dated December 4, 1987, the pledge agreement executed by McDonald in 1987 (the specific date is not set forth on the instrument), and the personal guarantee executed by McDonald on May 12, 1988. It contends that in the absence of ambiguity Massachusetts law enforces the express terms of a contract, *ER Holdings, Inc. v. Norton Co.*, 735 F.Supp. 1094, 1097 (D.Mass. 1990); *Edwin R. Sage Co. v. Foley*, 12 Mass. App.Ct. 20, 28, 421 N.E.2d 460 (1981), and that "[a] reasonable interpretation of the mortgage indicates that the instrument was intended to cover the credit line agreement and guarantees executed on May 12, 1988, as well as instruments executed concurrently with the mortgage previous to the mortgage." Despite this argument, the Defendant also contends that factual issues exist that must be dealt with at a trial, namely 1) "whether or not [McDonald] intended that the mortgage would cover future personal guarantees, including the unlimited Personal Guaranty;" 2) "[w]hether or not the language in the mortgage ... covers past and future notes and guarantees, as well as those instruments executed on the same date of the mortgage;" and 3) whether the " 'dragnet clause' in the Pledge Agreement covers the note and guarantee of May 12, 1988."

## V. DISCUSSION

As a preliminary matter, the Court rejects the Defendant's notion that there are material facts in dispute that would prohibit the entry of partial summary judgment with respect to count I of the Plaintiffs' complaint. *See* Fed.R.Bankr.P. 7056. The Defendant submitted no counter-affidavits to create genuine issues of fact as required by Fed. R.Civ.P. 56(e), made applicable to this proceeding by Fed.R.Bankr.P. 7056. Moreover, the first issue raised by the Defendant is irrelevant because in the absence of ambiguity, which has not been alleged, the mortgage speaks for itself. The other purported factual issues also turn on the language appearing in the documents drafted by the Milford Savings Bank.

The Court is unable to accept the arguments advanced by the Defendant. The Court finds that the language of the mortgage controls the outcome of the case and is unambiguous, though poorly drafted. The mortgage refers to "Promissory Notes, Personal Guarantees and *other* evidence of indebtedness" as well as interest provided in those instruments of indebtedness "*as provided in a note of even date.*" There was no note dated December 11, 1987, the date of the mortgage, although the reference presumably was to one of the two notes signed on December 4, 1987. Moreover, the phrase emphasized above expressly limits the grant of security to the payment of the note of even date. Assuming a note of even date existed, the Court finds that the language in the mortgage would not be sufficient to secure the May 12, 1988 note executed *after* the return of the December 4, 1987 note, the note closest in time to the mortgage. Although the mortgage contains references to other obligations, it does not contain any language referring to indebtedness "hereafter arising, as provided in the note or notes given therefore....", as in *Financial Acceptance Corp. v. Garvey*, 6 Mass.App.Ct. 610, 611, 380 N.E.2d 1332 (1978), or to the real estate being security for all direct and contingent liabilities "whether now existing or hereafter contracted", as in *Everett Credit Union v. Allied Ambulance Servs., Inc.*, 12 Mass.App.Ct. 343, 344, 424 N.E.2d 1142 (1981). Accordingly, based upon the language of the mortgage alone, the May 12, 1988 note is not secured by the mortgage dated December 11, 1987, and the obligation

owed to the Defendant by the Debtors is an unsecured debt.

■ The court in *Garvey* stated the following: "[t]he guiding principle in construction of a dragnet clause in a mortgage is the determination of the intent of the parties in view of the particular circumstances and *the language employed in the mortgage.*" 6 Mass.App.Ct. at 612, 380 N.E.2d 1332 (emphasis supplied). The court in *Garvey* also noted that "[u]nder Massachusetts law the renewal of a note in a different form does not operate to discharge a mortgage where the debt itself has not been paid. This rule applies even where the new note includes a new debt." *Id.* at 614, 380 N.E.2d 1332 (citations omitted). The court also indicated the following:

> Even if the August, October, and November, 1972, notes had not been continuations of the original indebtedness and were not covered by the dragnet clause, the judgment is supportable by the master's finding of an intent to continue the mortgage as security for the new notes. Where an oral agreement is made to continue a mortgage as security for a new indebtedness and money is advanced by the mortgagee in reliance thereon, Massachusetts courts refuse to discharge the mortgage on equitable principles. The plaintiff argues that such an agreement may not be enforced against a subsequent mortgagee. However, this rule applies only where the subsequent mortgagee has no knowledge of the facts.

*Id.* at 614–15, 380 N.E.2d 1332 (citations omitted, footnote omitted). Despite this dicta which may be construed as favorable to the Defendant, the Defendant has not argued that the facts of this case warrant some type of equitable relief or that the parole evidence rule should not apply to bar testimony about the intentions of the parties. More particularly, the Defendant did not file a counterclaim seeking to reform the mortgage. In this regard, the Court is not unmindful that the note executed by the Debtors in May of 1988 refers to the 1987 mortgage, which suggests that the Milford Savings Bank was at least attempting to make a secured loan.

In the *Allied Ambulance* case, the court upheld a dragnet clause in a mortgage although a subsequent loan was secured by other collateral and the note and security agreement did not refer to the earlier mortgage. The court noted that the master's finding contained no evidence of the intent of the parties in executing the mortgage. The court ruled, however, that reliance on the language employed in the mortgage was sufficient. 12 Mass.App.Ct. at 347, 424 N.E.2d 1142.

In *First Seneca Bank v. Electralloy Corp. (In re Old Electralloy Corp.)*, 132 B.R. 705 (Bankr.W.D.Pa.1991), the court considered an issue similar to the one involved in the instant case. The court found Pennsylvania law to be determinative:

> 'a mortgage which does not specifically indicate that it covers future advances gives the mortgagor [sic] no lien on the mortgaged property other than for the unpaid portion of the original advance, together with any incidental charges properly provided for in the mortgage.'

132 B.R. at 708, *quoting Western Pennsylvania Nat'l Bank v. Peoples Union Bank and Trust Co.*, 439 Pa. 304, 307, 266 A.2d 773, 775 (1970).[4] The bankruptcy court also rejected the mortgagee's arguments that the mortgage and the note should be read together since the note, rather than the mortgage, contained a dragnet clause as an " 'erroneous non sequitur.' " *Id.* The court stated that a bank would have no obligation to reveal the contents of a note to a potential subsequent lienholder or interested party.

Although this Court is aware that McDonald signed six documents containing dragnet clauses, and her husband signed a number of others, the document that counted to secure her indebtedness to the Defendant—the December 11, 1987 mortgage, did not contain a dragnet provision. The Court is satisfied that Massachusetts law permits an interpretation of the mortgage alone to

---

**4.** A justice of the Pennsylvania Supreme Court in a concurring opinion emphasized the necessity of an "appropriate reference" in the public record.

discover the intention of the parties and the extent of the security. The Court has not been presented with any evidence or argument to relieve the Defendant of Milford Savings Bank's sloppy draftsmanship and consequent defective mortgage. Accordingly, this Court shall follow the holding of *In re Old Electralloy Corp., supra.*

## VI. CONCLUSION

Upon consideration of the foregoing, the Court hereby grants the Plaintiffs' Motion for Partial Summary Judgment and enters partial summary judgment in favor of the Plaintiffs and against the Defendant on count I of the Plaintiffs' complaint. The Court also denies the Defendant's pending motion for relief from the automatic stay with respect to the December 11, 1987 mortgage.