EVERETT CREDIT UNION *vs*. ALLIED AMBULANCE
SERVICES, INC. & others.[1]

Middlesex. April 13, 1981. — August 18, 1981.

Present: BROWN, DREBEN, & KASS, JJ.

*Mortgage*, Dragnet clause, Priority. *Corporation*, Dissolution. *Taxation*, Priority of tax liens. *Damages*, Attorney's fees.

In the circumstances, a provision in a real estate mortgage agreement which made the real estate security for all "direct and contingent liabilities" of the mortgagor to the mortgagee "whether now existing or hereafter contracted" was applicable to a subsequent advance to the mortgagor even though that advance was secured by other collateral and the security agreement for that advance did not refer to the earlier mortgage provision. [345-347]

Creditors of a corporation who obtained a judgment against the corporation's stockholders after the corporation had been dissolved and recorded the execution on the property which stood in the corporation's name were judgment creditors of the corporation for purposes of G. L. c. 62C, § 50 (*b*). [347-349]

Where a note and a mortgage provided for reasonable attorney's fees upon foreclosure of the mortgage and a judge disallowed the mortgagee's requests for such fees and for interest, the case was remanded to the Superior Court for a determination of a reasonable attorney's fee and the computation of interest unless findings are made as to why such amounts should not be allowed. [349-350]

CIVIL ACTION commenced in the Superior Court on June 13, 1978.

The case was heard by *Connolly*, J., on a master's report. Motions to amend judgment were heard by *Cratsley*, J., a

---

[1] Massachusetts Bank and Trust Company, United States of America (Internal Revenue Service), Commonwealth of Massachusetts (Department of Corporations and Taxation, now the Department of Revenue), Jerome J. Rosenstein and Charles Silk. The last two were partners and are treated as a single claimant for purposes of this opinion.

District Court judge sitting under statutory authority and by *O'Neil*, J.

*Hyman Katz* for the plaintiff.

*Mary E. Dacey*, Assistant Attorney General, for the Commonwealth.

*Jacob Bloch* for Jerome J. Rosenstein & another.

*Steven A. Remsberg* for Massachusetts Bank and Trust Company.

*Philip I. Brennan*, of the District of Columbia, for Internal Revenue Service.

DREBEN, J.  Everett Credit Union (Everett), the holder of a mortgage on real estate owned by the debtor, Allied Ambulance Services, Inc. (Allied), conducted a foreclosure sale.  This is an interpleader action brought by Everett to resolve competing claims to the surplus proceeds.  Everett and the Commonwealth of Massachusetts are two of five claimants to these proceeds, and in their appeals they challenge the order of priority of the claims set forth in the judgment.  The order of priority is critical, as the surplus proceeds ($38,394.70) are insufficient to pay all the claims.  A third claimant, Massachusetts Bank and Trust Company (Bank), appeals on the ground that the judgment did not include interest and attorney's fees to which it claims it is entitled.  The two remaining claimants (see note 1, *supra*), the United States and Rosenstein and Silk, have not appealed.

The judgment gave lowest priority to a 1975 claim of Everett for sums advanced to Allied for the purchase of ambulances.  Although Everett repossessed and sold the ambulances, a deficiency remained.  Everett contends that the judge was in error, and that it is entitled to first priority based on a clause in the 1971 mortgage held by it on the real estate of Allied which made that real estate security for all "direct and contingent liabilities" of Allied to Everett "whether now existing or hereafter contracted."  The Commonwealth urges that the judgment incorrectly permitted two partners, Jerome J. Rosenstein and Charles Silk, who were creditors of Allied to take ahead of the Commonwealth's tax liens.  Rosenstein and Silk were given priority

under G. L. c. 62C, § 50(*b*), on the basis of a judgment recovered against individual stockholders of Allied at a time when the corporation was dissolved.

We hold that the Bank is entitled to interest and reasonable attorney's fees, that Everett's 1971 mortgage secured its 1975 claim, and that Rosenstein and Silk were judgment creditors of Allied. The judgment is to be modified in accordance with our opinion. The facts, based on an adopted master's report, will be set forth as required.

1. *The validity of the 1971 mortgage provision.* As indicated earlier, the 1971 mortgage given by Allied to Everett contained a so called "dragnet" provision which purported to secure debts of Allied "whether now existing or hereafter contracted." Everett contends that it has priority over all claimants by reason of this clause.[2]

Although the record does not indicate the purpose of Allied's $30,000 borrowing in 1971, which was secured by Everett's first mortgage, documents which evidenced a subsequent borrowing made by Allied from Everett in 1975 suggest that the later loan was for the purchase of ambulances. Allied executed a separate security agreement in 1975 which gave Everett a security interest in the ambulances. Neither the security agreement nor the 1975 note referred to the 1971 mortgage. The 1971 note, unlike the 1975 note, was captioned "Real Estate Note."

The master made the following finding: "While no evidence was introduced as to the intent of the parties in executing the August 11, 1971, mortgage (Exhibit 1), I infer

---

[2] We need not decide the legal issue whether Everett's 1975 claim has priority over the 1972 Bank mortgage as it does not appear from the record that the surplus proceeds are insufficient to cover the claims of both the Bank and Everett. In addition, none of the parties other than Everett has briefed that issue, and Everett merely makes the bare assertion that it is entitled to first priority. That assertion is not argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). On the merits, see generally Osborne, Mortgages §§ 118 & 119 (2d ed. 1970). See also *Barnard* v. *Moore*, 8 Allen 273, 274 (1864); *Gray* v. *McClellan*, 214 Mass. 92, 95-97 (1913); *Bank of Ephraim* v. *Davis*, 559 P.2d 538, 540-541 (Utah 1977).

from Exhibits 13 [the 1975 security agreement] and 14 [the 1975 note] that by executing a separate security agreement for the ambulances, the parties did not intend the original real estate mortgage to cover this later acquisition of ambulances and their financing." The judge adopted the master's finding in his "Order and Memorandum of Decision" and stated that the 1975 loan for purchasing ambulances is not "of the general kind of debt secured by a real estate mortgage." He went on to say, "Moreover, the execution of a separate security agreement for the ambulances supports the inference that the parties did not intend the dragnet clause to secure the loan for ambulance acquisition."

As the conclusions of the master and the judge are based solely on documentary evidence,[3] we are in the same position as they were and need not be bound by their conclusions. *Coonce* v. *Coonce*, 356 Mass. 690, 693 (1970). We consider the fact that there was collateral for the second loan insufficient to find a waiver of the 1971 mortgage provision.

Mortgages covering future advances are usually held valid in Massachusetts, at least where such advances are made prior to the intervention of other liens. *Barnard* v. *Moore*, 8 Allen 273, 274 (1864). *Carlson* v. *Lawrence H. Oppenheim Co.*, 334 Mass. 462, 465 (1956). *Bennett* v. *Worcester County Natl. Bank*, 350 Mass. 64, 67-68 (1966). *Financial Acceptance Corp.* v. *Garvey*, 6 Mass. App. Ct. 610, 614 (1978). This is true even where other collateral secures the later advance. *Exchange Trust Co.* v. *Hitchcock*, 249 Mass. 547, 549-550 (1924). See generally Osborne, Mortgages § 118 (2d ed. 1970). The Uniform Commercial Code also permits a security agreement to "include future advances." G. L. c. 106, § 9-204, as appearing in St. 1979, c. 512, § 7. See generally 2 Gilmore, Security Interests in Personal Property § 35.5 (1965).

---

[3] All counsel stipulated at oral argument in this court that the only evidence as to the intention of the parties was documentary.

While so called "dragnet" clauses are narrowly construed where they are used oppressively or as a device for fraud, "relief from the effect of dragnet clauses involves principles of equity." *Wong* v. *Beneficial Sav. & Loan Assn.*, 56 Cal. App.3d 286, 297 (1976). *Capocasa* v. *First Natl. Bank*, 36 Wis.2d 714, 720, 726 (1967). See *Financial Acceptance Corp.* v. *Garvey*, 6 Mass. App. Ct. at 616. See also Osborne, Nelson and Whitman, Real Estate Finance Law § 12.8 (1979), where, at 773, the authors state that the holdings limiting "dragnet" provisions "are said to be based on the intention of the parties, but in reality they usually represent the court's conceptions of fairness and equity."

There is here no evidence of any unfairness or oppressiveness in the relationship between Everett and Allied. Both loans were made for business purposes in a commercial setting. The master expressly pointed out that no evidence was introduced as to the intent of the parties in executing the 1971 mortgage. In such circumstances, contrary to the view of some of the creditors, we deem it wholly consistent with the view expressed in *Financial Acceptance Corp.* v. *Garvey, supra* at 613, to rely on "the language employed in the mortgage." The question is not whether the 1975 loan refers to the mortgage provision, but rather whether the 1971 mortgage includes the later advance.

The fact that the later loan did not make reference to the earlier mortgage and had its own collateral is not sufficient, in our opinion, to constitute a waiver of the 1971 mortgage provision. See *Exchange Trust Co.* v. *Hitchcock*, 249 Mass. at 550. We recognize that there is authority to the contrary elsewhere on this issue. For a collection of authorities, see both the majority and dissenting opinions in *First Security Bank* v. *Shiew*, 609 P.2d 952 (Utah 1980). However, in the circumstances of this case we see no reason to conclude that the parties did not intend the 1971 mortgage provision to operate as written. We therefore accord priority over subsequently recorded liens to Everett's 1975 claim.

2. *Priority of Rosenstein and Silk over the Commonwealth's tax liens.* Allied was dissolved by judicial decree

on February 3, 1971. Nevertheless, as stipulated by all counsel, after that date "some entity or individuals originally affiliated with [Allied] as shareholders and/or directors continued to operate the business of [Allied] with the same equipment and at the same location during all times material to this action." Everett and the Bank obtained certificates of revival of Allied pursuant to G. L. c. 156B, § 108. Rosenstein and Silk did not follow that procedure. Instead, they obtained a judgment against two individuals who were stockholders of Allied and recorded the execution issued thereon on July 13, 1977, a date prior to the revival certificates obtained by Everett or the Bank.

No claimant challenges the levy and execution, see G. L. c. 223, § 59, and G. L. c. 236, § 4 (as in effect prior to St. 1980, c. 152), and no one argues that Rosenstein and Silk were not creditors of Allied. The Commonwealth and Everett claim that because the judgment was obtained against stockholders and not the corporation itself, Rosenstein and Silk are not judgment creditors of Allied.

The judge found that Rosenstein and Silk were judgment creditors of Allied, see G. L. c. 62C, § 50(b)(1),[4] and entitled to priority over the Commonwealth "insofar as the amount represents the interest of [the stockholders in Allied]." We agree.

A judgment may not be obtained against a dissolved corporation. *Thornton* v. *Marginal Freight Ry.*, 123 Mass. 32, 35 (1877). Its property is held as tenants in common by its stockholders, *Cummington Realty Associates* v. *Whitten*, 239 Mass. 313, 325 (1921), or, if only one, by its sole stockholder, *Springfield* v. *Schaffer, ante* 277, 279 (1981).

---

[4] General Laws c. 62C, § 50(b)(1), inserted by St. 1976, c. 415, § 22, states that, with respect to real estate, a lien of the Commonwealth for taxes "shall not be valid as against any mortgagee . . . or judgment creditor until notice thereof has been filed . . . in the registry of deeds." Notice of the Commonwealth's lien was not filed until September 9, 1977, a date subsequent to the recording on July 13, 1977, by Rosenstein and Silk of the levy and execution issued on their judgment.

The interest of the stockholders in a dissolved corporation may be reached by its creditors. See *Folger* v. *Columbian Ins. Co.*, 99 Mass. 267, 276-277 (1868); *Springfield* v. *Schaffer, supra* at 279. See generally 16A Fletcher, Cyclopedia of the Law of Private Corporations § 8161 (rev. perm. ed. 1979). Accordingly, we hold that Rosenstein and Silk became judgment creditors of Allied within the meaning of G. L. c. 62C, § 50(*b*), when they attached and, following judgment, obtained execution on the property which stood in the name of Allied but which, as matter of law, was held by its stockholders.[5] They therefore have priority over the Commonwealth's subsequently recorded tax liens to the extent of the interest owned by the stockholders named in the Rosenstein and Silk action.[6]

We note that the judgment, as amended, does not indicate the percentage interest in Allied of the stockholders against whom Rosenstein and Silk obtained judgment. This matter should be determined on remand.

3. *Right of the Bank to attorney's fees and interest after September 1, 1978.* These claims of the Bank are not separately treated by any party other than the Internal Revenue Service. The latter contests the amount of the attorney's fee but does not contest the Bank's right to recover such fees or interest. Both the note and the mortgage provided for reasonable attorney's fees. There is authority for the recovery both of interest, *Bangs* v. *Fallon*, 179 Mass. 77, 87 (1901), and reasonable attorney's fees, *Leventhal* v. *Krinsky*, 325 Mass. 336, 340-341 (1950); *Kacouris* v. *Loukas*, 333 Mass. 44, 50 (1955). As no reason appears for the judge's disal-

---

[5] The writ of attachment commanded the attachment of all right, title and interest of the two stockholders in the real estate standing in the name of Allied.

[6] We do not consider the contention made by Rosenstein and Silk that the certificates of revival of Allied obtained by Everett and the Bank do not have retroactive effect. Rosenstein and Silk did not appeal from the judgment and are, therefore, not entitled to more favorable treatment than they received below. *M. L. Shalloo, Inc.* v. *Ricciardi & Sons Constr.*, 348 Mass. 682, 684 (1965).

lowance of the bank's requests, we remand the matter to the Superior Court for a determination of a reasonable attorney's fee and the computation of interest unless findings are made why such amounts should not be allowed.

4. *Procedure on remand.* On remand, the judge shall make such additional findings as he deems necessary consistent with this opinion, and in accordance with such findings shall prepare a new judgment. If fees and interest are awarded pursuant to part 3 hereof, the amount to be paid to the Bank shall reflect the amounts awarded. The next priority shall be given to Everett's claim. The judgment is also to reflect an agreement by the United States and the Commonwealth that the Commonwealth's claim for taxes assessed on January 31, 1976, is to be given priority over the claim for taxes assessed by the United States on February 12, 1976. In other respects the order of priority set forth in the judgment, as amended on February 4, 1980, is to stand.

*So ordered.*