**In re THUNDERBOLT REALTY TRUST, Debtor.**

**Steven WEISS, Trustee, Plaintiff,**

**v.**

**David AZRAN, Eleanor B. Martin, et al., Defendants.**

**Bankruptcy No. 89–41009–JFQ.**
**Adv. No. 94–4319.**

United States Bankruptcy Court,
D. Massachusetts.

Dec. 22, 1995.

Steven Weiss, Trustee, Plaintiff, Shatz, Schwartz & Fentin, P.C., Springfield, MA.

Michael J. Rye, Doherty Wallace Pillsbury and Murphy, P.C., Springfield, MA and Nancy F. Pelletier, Robinson Donovan Madden & Barry, P.C., Springfield, MA, for David Azran, Defendant.

Louis Kerlinsky, Springfield, MA, for Eleanor Martin, Defendant.

David W. Ostrander, Northampton, MA, for Charles Arment, Defendant.

Stephan Rodolakis, Peters, Barnhill & Rodolakis, Worcester, MA, for A. Richard Grebe, Jr. d/b/a Taiga Forest Products, Ltd., Defendant.

Claire L. Thompson, Doherty, Wallace, Pillsbury & Murphy, P.C., Springfield, MA, for Keyes & Donnellan, P.C., Defendant.

Robert M. Mack, Morrison, Mahoney & Miller, Springfield, MA, for Michael Kogut, Defendant.

Rosemary A. Moriarty, Holyoke, MA, Defendant Pro Se.

Thomas J. Moriarty, Holyoke, MA, Defendant Pro Se.

## SUMMARY JUDGMENT DECISION ON SECURED CLAIM OF CHARLES ARMENT

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Steven Weiss, the trustee in this chapter 7 case (which was converted from chapter 11 after confirmation) (the "Trustee"), seeks a declaratory judgment concerning the rights of various parties claiming liens and interests in real estate standing in the name of Thunderbolt Realty Trust (the "Debtor"). The defendants assert cross-claims against each other. I decide here only the rights of the defendant Charles Arment ("Arment"). The principal questions presented are: (i) whether the automatic stay was violated by entry of Arment's postfiling judgment against the Debtor, and its affirmance on appeal, when the case had been tried and taken under advisement prior to the bankruptcy filing, (ii) if a violation occurred, whether the judgment should be retroactively validated, and (iii) whether Arment made a valid postfiling levy of execution upon his judgment to the extent the levy sought to perfect his prepetition attachment lien.

Before the court are motions for full or partial summary judgment filed by the following defendants: (i) Keyes and Donnellan, P.C. and Michael Kogut (jointly), (ii) A. Richard Grebe, Jr., and (iii) Eleanor B. Martin. Unlike the other parties, Keyes and Donnellan, P.C. and Michael Kogut assert no interest in the Debtor's property. They have intervened to attack the Arment claim because they are defendants in a state court legal malpractice suit in which the Debtor asserts they were remiss in defending the Debtor in Arment's law suit. In attacking his claim here, they hope to reduce the potential damages in the malpractice suit, which the state court has stayed pending this court's decision.

## I. FACTS

The parties agree on the facts. In 1986, Arment brought suit in Hampden County Superior Court against the Debtor, Russell E. Martin ("Martin"), the Debtor's principal, and numerous other individuals and entities with whom Martin had business relationships. Arment alleged that Martin and the other defendants, including the Debtor, had defrauded him in a 1985 transaction in which Arment purchased for $25,000 a 1970 Mack Maxidine Rolloff Ten–Wheel Truck and agreed to purchase for $10,000 eight containers which had been removed from the truck. The case was tried in late July and early August of 1989 before the Honorable William W. Simon, who took the matter under advisement. During the trial, on August 2, 1989, Judge Simon granted Arment a $50,000 attachment against real estate of the Debtor located in Springfield, Massachusetts and an attachment of $13,160.78 by way of trustee process against the Debtor's deposit account with Bank of New England–West, N.A.[1] The writ of attachment was recorded the same day in the Registry of Deeds for Hampden County. The Debtor filed a chapter 11 petition with this court on October 20, 1989.

Judge Simon rendered his decision on July 31, 1990, after the bankruptcy filing. He found that Martin had acted on behalf of the Debtor in the transaction and had wrongfully refused to deliver to Arment both the truck's title certificate and the eight containers. Based perhaps on an oral motion to amend the complaint made during trial, Judge Simon also found that in 1976, nine years before the truck transaction, Martin had transferred all his Massachusetts real estate to the Debtor "intentionally to place such property beyond the reach of any creditor in fraud of the rights of the plaintiff herein." He found Arment had suffered damages in the form of lost profits in the sum of $90,000 and doubled those damages under chapter 93A of the Massachusetts General Laws. See Mass.Ann.Laws ch. 93A, § 11 (Law.Co-op.1994). To the total award of $180,000 he added legal fees and expenses of $20,333.90, and entered judgment for $200,333.90. Judge Simon had no knowledge of the Debtor's intervening bankruptcy. Notice of bankruptcy was never filed in the case.

Both parties appealed, so execution did not immediately issue on the judgment. During

---

1. No party has contested the validity of this attachment of the bank account by trustee process.

the course of the appeal, but not before, Arment and his lawyer became aware of the Debtor's bankruptcy filing. Arment did not seek relief from stay to continue prosecution of the appeal, nor was he requested to do so by the Debtor, who was intent on prosecuting its own appeal. No document was filed during the appeal to inform the Massachusetts Appeals Court of the Debtor's bankruptcy.

On January 15, 1993, the Appeals Court affirmed the judgment. Execution issued on June 18, 1993 in the sum of $180,000 plus interest of $145,800 and costs of $20,333.90. On June 22, 1993, a deputy sheriff recorded the execution in the Hampden County Registry of Deeds, stating that he levied upon all of the Debtor's real property in Hampden County which was attached on mesne process on August 3, 1989. The deputy sheriff also said he suspended further action on the request of the creditor.

## II. VALIDITY OF ARMENT JUDGMENT

■ Among the acts stayed by a bankruptcy filing is:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
. . . .

11 U.S.C. § 362(a)(1) (1988)

Court proceedings are typically commenced or continued through the action of a party in the form of the filing of a pleading or the like. There was no such postfiling action here. Judge Simon issued judgment unprompted by any action taken by Arment after October 20, 1989, the bankruptcy filing date. Unlike the other subsections of section 362(a), however, subsection (a)(1) does not use terms that connote only the conduct of a creditor. It speaks generally of the "commencement or continuance" of a judicial proceeding, and the "issuance or employment of process." In any event, affirmance of the judgment by the Appeals Court was obviously the result of postfiling action by Arment, who both contested the Debtor's appeal and prosecuted his own appeal seeking to enhance the judgment amount. I conclude the Arment judgment of July 31, 1990, and its affirmance by the Appeals Court, were both a violation of the stay.

■ The questions remain, however, whether the judgment can or should be validated. Section 362(d) authorizes the bankruptcy court to "grant relief from the stay . . . such as by terminating, *annulling*, modifying, or conditioning such stay. . . ." 11 U.S.C. § 362(d) (1988). (emphasis supplied). The court's authority to annul the stay is significant. To annul a judgment, or an injunction such as the automatic stay, means "to deprive it of all force and operation, either *ab initio* or prospectively as to future transactions." *Black's Law Dictionary* 83 (5th ed. 1979). Thus I may grant retroactive relief from the stay, as requested by Arment. Such relief has been approved by the First Circuit. *See Interstate Commerce Commission v. Holmes Transportation, Inc.*, 931 F.2d 984, 987 (1st Cir.1991) ("Judicial actions and proceedings, as well as extrajudicial acts, in violation of the automatic stay, are generally void and without legal effect . . . unless countenanced by the court in which the [case] is pending."). A violation of the stay is voidable rather than void. *E.g., Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir. 1989) (bankruptcy court may grant retroactive relief so as to validate filing of complaint and thereby avoid statute of limitation problem that would arise from the filing of a second complaint); *In re Boston Harbor Marina Co.*, 157 B.R. 726, 736 (Bankr.D.Mass. 1993) (court has power to validate postpetition tax assessment). *Compare Schwartz v. United States (In re Schwartz)*, 954 F.2d 569 (9th Cir.1992) (postpetition tax assessment remains void in absence of request that bankruptcy court validate assessment retroactively).

It is appropriate to annul the stay so as to validate the Arment judgment and its affirmance on appeal. The case has been fully tried. The judgment has withstood a contested appeal. It would be a waste of judicial

resources to require a repetition of all this litigation. I decline the request of the defendant A. Richard Grebe, Jr. that I find inequities in the judgment.

The equities also favor validation. Arment did not learn of the bankruptcy filing until the appeal was in process. Because the Debtor wished to prosecute its own appeal, it never requested him to terminate his appeal. Such equitable considerations have persuaded courts to grant retroactive stay relief. *See, e.g., Matthews v. Rosene,* 739 F.2d 249 (7th Cir.1984) (debtor's prosecution of action and delay in taking action to void judgment on counterclaim sufficient to make debtor guilty of laches); *Job v. Calder (In re Calder),* 907 F.2d 953, 956 (10th Cir.1990) (silence of debtor on bankruptcy filing bars debtor from taking advantage of automatic stay). It seems just that the other co-defendants, as well as the Debtor, should bear the burden of these equities favoring Arment.

## III. VALIDITY OF EXECUTION LEVY

■ Although bankruptcy courts often approve the commencement or continuance of litigation elsewhere for the purpose of liquidating a claim, they look askance at postpetition actions designed to obtain or enhance a lien because of the preferential effect of such a lien. There is an exception, however, for a certain kind of postfiling perfection. Section 546(b) of the Code validates nonbankruptcy law which "permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection...." 11 U.S.C. § 546(b)(1)(A) (1988). Such postfiling perfection, moreover, is not a violation of the automatic stay. 11 U.S.C. § 362(b)(3) (1988 & Supp.1994).

Arment's June 22, 1993 levy of execution is such an act of perfection. The levy perfected his $50,000 prepetition attachment and thereby gave Arment rights in the Debtor's Springfield property which are superior to the rights of parties acquiring an interest in the property between the time of attachment and the time of levy. This can be inferred from the language of the statute, which provides, in relevant part:

Upon judgment for the plaintiff in a civil action, property which has been attached in connection with said action *shall remain subject to attachment* for thirty days after the date which appears on the execution issued upon such judgment pursuant to chapter two hundred and thirty-five, unless sooner dissolved.

Mass.Ann.Laws ch. 223, § 59 (Law.Co-op.1986) (emphasis supplied).

Case law is to the same effect. In *Kahler v. Town of Marshfield,* the Supreme Judicial Court of Massachusetts noted "[a]n attachment of real estate, duly made and recorded, doubtless creates an immediate lien, which, if made effective by a levy of execution in due form within thirty days after judgment, is not impaired by any intervening incumbrance upon or alienation of the estate attached." 347 Mass. 514, 198 N.E.2d 647, 648–49 (1964) (quoting *Gardner v. Barnes,* 106 Mass. 505, 506 (1871)). In *Kahler,* real estate on which the plaintiffs had levied attachment was later taken by eminent domain, and the town paid the eminent domain award to the former owner, who spent the proceeds and filed a petition in bankruptcy. The court held the plaintiffs were entitled to recovery from the town, which had constructive notice of the attachment and thus violated their property rights by paying the former owner. *See also Bartlett v. Moore,* 233 Mass. 481, 124 N.E. 275 (1919) (where plaintiff obtained attachment on real estate, the real estate was sold, and plaintiff then received judgment, plaintiff entitled to payment out of proceeds as against creditor claiming under subsequent attachment); *Everett Credit Union v. Allied Ambulance Servs., Inc.,* 12 Mass.App.Ct. 343, 348, 424 N.E.2d 1142, 1145–46 (1981) (claimants became judgment creditors when they attached and, following judgment against stockholders of a corporation, obtained execution on property standing in name of the corporation but held by its stockholders, and thus had priority over Commonwealth's subsequently recorded tax lien).

Keys and Donnellan, P.C. contend the levy is invalid because it was made months after the judgment was affirmed by the Massachusetts Appeals Court. The date of the execution, however, is the critical date. The exe-

cution was not issued until June 18, 1993. Attached real estate remains "subject to attachment for thirty days after the date which appears on the execution issued upon such judgment .. unless sooner dissolved." Mass. Ann.Laws ch. 223, § 59 (Law.Co-op.1986). *See also* Mass.Ann.Laws ch. 236, § 4 (Law. Co-op.1986) ("If land was attached on mesne process, a copy of the execution with a memorandum as aforesaid shall be deposited by the officer in the registry of deeds ... within forty days after the date which appears on the execution ... and the attachment shall become void forty days after said date unless the copy is so deposited....."). Although these two statutes may, at first blush, appear to be inconsistent, they are in fact not. *See McGrath v. Worcester County Nat'l Bank*, 3 Mass.App.Ct. 599, 601, 338 N.E.2d 361, 363 (1975) (thirty day period in ch. 223 § 59 is one during which attached property shall be held so that it may be taken on execution, while forty day period in ch. 236 § 4 is one during which copy of execution must be deposited in registry of deeds after the judgment). Arment thus has a valid and perfected lien. That lien, however, is limited to $50,000, the amount of the attachment. By its own terms, it is also limited to property of the Debtor located in Springfield.

## IV. ATTACHMENT LIEN AS A PREFERENCE

Two of the defendants assert that the Arment real estate attachment lien is void as a preference. They have no standing to avoid preferential transfers. The Trustee has decided not to attempt to avoid this lien because of the difficulty he believes he would face in establishing the Debtor's insolvency on August 2, 1989.

## V. ALLOWANCE AND PRIORITY OF ARMENT CLAIM IN EXCESS OF $50,000

A. Richard Grebe, Jr. requests a determination of the amount and priority of the Arment claim in excess of $50,000. The timeliness of the claim is also questioned. Those matters, however, pertain to claim allowance, which is properly handled by the Trustee. I therefore make no ruling on

them. It seems obvious, however, that post-filing interest is not allowable, and the portion of the claim attributed to the chapter 93A penalty is subordinated. *See* 11 U.S.C. §§ 502(b)(2), 726(a)(4) (1988).