Francis S. HOLT, Loraine B. Holt, and Christine Anne Realty Corp., Appellants,

v.

THE FEDERAL DEPOSIT INSURANCE CORP. In its Capacity as Receiver for the New Bank of New England, N.A. and RECOLL Management Corp., Appellees.

No. CIV. 97–11471–WGY.

United States District Court, D. Massachusetts.

Dec. 31, 1997.

Stephen A. Greenbaum, David J. Paliotti, Greenbaum, Nagel, Fisher & Hamelburg, Boston, MA, for Francis S. Holt, Loraine B. Holt, Christine Anne Realty Corp., Debtors.

Charles A. Dale, Hanify & King, P.C., Boston, MA, for Francis S. Holt, Appellants.

### *MEMORANDUM AND ORDER*

YOUNG, District Judge.

Francis S. Holt ("Mr.Holt"), Loraine B. Holt ("Mrs.Holt"), and Christine Anne Realty Corporation ("Christine Anne Realty") (collectively "the Holts") here appeal the Bankruptcy Court's entry of summary judgment for the Federal Deposit Insurance Corporation ("FDIC") and RECOLL Management Corporation ("RECOLL")[1] on all

---

1. On April 28, 1986, Mr. and Mrs. Holt executed a $400,000 promissory note in favor of the Bank of New England and secured by a mortgage on their principal residence located at 150 Summit Avenue, Quincy, Norfolk County, Massachusetts ("Summit Avenue Property"). Defs.' Stmt. Undisputed Material Facts ¶¶ 14, 15. This promissory note was amended by an Amendment to the Mortgage Note dated December 13, 1990 executed by the Holts and Bank of New England which extended the maturity date of the $400,000 promissory note from March 20, 1991 to June 30, 1991, in exchange for the payment of an extension fee to the Bank of New England, and a mortgage on property located at 67 Phillips Street, Boston, Suffolk County, Massachusetts ("Phillips Street Property") by February 13, 1991. *Id.* ¶ 17–19. The Holts are in default on their obligations under the $400,000 promissory note. *Id.* ¶¶ 20, 21.

On March 14, 1988, the Holts executed a $150,000 promissory note in favor of the Bank of

Counts contained in the Holts' May 5, 1995 Adversary Complaint. In their Adversary Complaint, the Holts pled seven counts: (1) Fraudulent Misrepresentation; (2) Breach of the Covenant of Good Faith and Fair Dealing; (3) Negligent Misrepresentation; (4) Violation of Mass. Gen. Laws ch. 93A; (5) Breach of Contract; (6) Equitable Subordination; and (7) a Determination of the Amount of FDIC's Secured Claim. Count VI was dropped by the Holts at the hearing on the Motion for Summary Judgment.

At oral argument on the Holts' appeal, this Court affirmed the judgment of the Bankruptcy Court as to Counts I, II, III, and IV, as there were no genuine issues of material fact in dispute and judgment for the FDIC and RECOLL was proper as matter of law. This Court took the remainder of the appeal under advisement in order to determine whether the Bankruptcy Court properly granted summary judgment on Count V.

Under Count V, the Holts assert that a contract existed between the New Bank of New England and the Holts entitling them to the immediate dispersal of $190,000 upon their granting the New Bank of New England mortgages upon their residence, 150 Summit Avenue, Quincy, Norfolk County, Massachusetts ("Summit Avenue Property") and upon commercial residential property located at 67 Phillips Street, Boston, Suffolk County, Massachusetts ("Phillips Street Property"). The Holts' claim that the New Bank of New England breached the terms of this contract by failing to make the $190,000 disbursement.

On March 21, 1991, the Holts granted the New Bank of New England a mortgage on the Summit Avenue Property and Phillips Street Property to secure the payment of $700,000. The $700,000 was to consist of the monies extended to the Holts under a promissory note for $400,000 ("$400,000 Note"), a promissory note for $150,000 ("$150,000 Note"), and "all other advancements made thereunder or advancements made by subsequent promissory notes." Exhibit 4.[2] Each party states that the purpose of the agreement embodied in the $700,000 mortgages was for the payment of outstanding real estate taxes. Brief of Plts. at 8; Defs.' Answer Plts' Interrogs. ¶ 7.

At oral argument, the Holt's counsel asserted that the $700,000 mortgages were the evidence of this contract. The Holts claim that under this contract $190,000 was to be

New England. *Id.* ¶ 22. Originally, this note was unsecured, but as additional consideration for the extension of the maturity date on the $400,000 promissory note, the Holts agreed to secure the $150,000 promissory note by granting a mortgage in the Phillips Street Property. *Id.* ¶¶ 23, 24. The Holts are in default on their obligations under the $150,000 promissory note. *Id.* ¶ 25.

On January 6, 1991, the Bank of New England was determined insolvent by and closed by the Comptroller of the Currency. *Id.* ¶ 4. The FDIC was appointed its receiver. *Id.* The New Bank of New England was established as a bridge bank pursuant to 12 U.S.C. § 1821. *Id.* On July 13, 1991, the New Bank of New England was dissolved pursuant to 12 U.S.C. § 1821(n)(12), and the FDIC was appointed its receiver. *Id.* ¶ 5. As a result of these transactions, The FDIC is now the holder of the Holts' obligations to the Bank of New England. *Id.*

RECOLL was a Massachusetts corporation with a principal place of business at 245 Summer Street, Boston, Massachusetts. *Id.* ¶ 6. From June 1, 1991 to July 31, 1995, RECOLL was the FDIC's attorney in fact with respect to collecting the obligations at issue due to the dissolution of the Bank of New England. *Id.* The FDIC owned the notes at issue and RECOLL operated under a delegation of authority from the FDIC, with procedures approved by the FDIC. *Id.* ¶ 73.

2. The $700,000 mortgages state in relevant part:

Know all Men by these Presents that Francis S. Holt, Jr. and Loraine P. Holt, of 120 Summit Avenue, Quincy, Norfolk County, Massachusetts, hereinafter referred to as the "Mortgagor" for consideration paid, hereby grants to New Bank of New England, N.A., as Assignee of the FDIC as Receiver of Bank of New England, N.A., a banking association organized under the law of the United States of America, with a principal place of business in Boston, Suffolk County, Massachusetts, hereinafter referred to as the "Mortgagee", with Mortgage Covenants, to secure the payment of seven hundred thousand and 00/100 ($700,000) dollars with interest thereon, as provided in two promissory notes from mortgagors, one dated 4/28/86 (as amended by Amendment to Mortgage Note dated 12/13/90) and one dated 3/14/88 respectively; this mortgage to secure same and all other advancements made thereunder or advancements made by subsequent promissory notes, the consideration for which is hereby acknowledged by mortgagor. Exhibit 4(A),(B).

dispersed upon the execution of the mortgages. The FDIC claims that the terms of the mortgages envisioned future advancements—not an immediate advancement—pursuant to the terms of the $400,000 Note, the $150,000 Note, or a subsequent promissory note, to pay outstanding real estate taxes. Moreover, the FDIC asserts that it satisfied the terms of this contract when it made payments on outstanding real estate taxes on March 2, 1992.[3] The Holts offer no evidence that these payments of the outstanding real estate taxes do not satisfy the contractual obligation of the New Bank of New England under the $700,000 mortgages. The Bankruptcy Court found that no contract existed requiring the dispersal of $190,000 by the FDIC in exchange for the granting of the $700,000 mortgages. It therefore concluded that there was no breach of contract nor breach of the implied covenant of good faith and fair dealing. The Holts appeal.

## STANDARD OF REVIEW

The standard of review to be applied by a district court in reviewing a bankruptcy court's judgment is *clearly erroneous* as to findings of fact and *de novo* with respect to conclusions of law. Fed. R. Bank. Proc. 8013; *see, e.g., In re La Roche*, 969 F.2d 1299, 1301 (1st Cir.1992). A summary judgment determination, of course, involves no fact finding and is thus reviewed *de novo*. Summary judgment, in turn, will not lie if there exists "a genuine issue of material fact." Fed.R.Civ.P. 56. For summary judgment purposes, "[a]n issue is only 'genuine' if there is sufficient evidence to permit a reasonable jury to resolve the point in the non-moving party's favor, while a fact is only 'material' if it has 'the potential to affect the outcome of the suit under the applicable law.'" *Bourque v. F.D.I.C.*, 42 F.3d 704, 708 (1st Cir.1994) (citations omitted). The non-moving party cannot defeat the motion for summary judgment by resting on mere allegations or conclusions in its pleadings. Rather, faced by the FDIC's Motion for

Summary Judgment, the Holts had to present definite, competent evidence which, if believed, would entitle them to judgment. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256–57, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986).

Therefore, to survive the FDIC and RECOLL's summary judgment motion, the Holts were required to put forth competent evidence (1) that the parties reached a valid written agreement supported by consideration containing a provision that required immediate dispersal of $190,000 upon the execution and delivery of the $700,000 mortgages; (2) that the FDIC breached the terms of this agreement; and (3) that the Holts suffered damages from the breach. *See, e.g., Coll v. PB Diagnostic Systems, Inc.*, 50 F.3d 1115, 1122 (1st Cir.1995). The Bankruptcy Court, concluding that no such written contract existed, entered summary judgment against the Holts. While this Court agrees with the Bankruptcy Court's result, it differs with the Bankruptcy Court in its approach to this issue.

## ANALYSIS

### 1. D'Oench Duhme Doctrine

 The Holts' first, albeit forlorn, hope depends on the oral representations made them by loan officers at New Bank of New England. The *D'Oench, Duhme* doctrine bars the enforcement of alleged supplemental oral agreements against the FDIC; it applies whenever the FDIC is acting in its capacity as a corporation or as a receiver. 12 U.S.C. § 1823(e); *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 462, 62 S.Ct. 676, 681–82, 86 L.Ed. 956 (1942); *see FDIC v. Smith*, 848 F.Supp. 1053, 1056 n. 6, *citing Timberland Design v. First Service Bank for Sav.*, 932 F.2d 46 (1st Cir.1991). The *D'Oench, Duhme* doctrine is codified at 12 U.S.C. § 1823(e) which states that:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or

3. Payment of the outstanding real estate taxes was proven by the Affidavit of Kathy A. Goulter, FDIC credit specialist, and copies of the checks. By a check dated March 2, 1992, FDIC paid $160,450.58 to the City of Boston Tax Collector's Office for outstanding real estate taxes on the

Chestnut Street and West Cedar Street properties. By a check dated March 2, 1992, FDIC paid $45,907.11 to the City of Boston Tax Collector's Office for outstanding real estate taxes on the Phillips Street Property. Exhibits 9, 10, & 11.

section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement: a) is in writing; b) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution; c) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee; and d) has been, continuously, from the time of its execution, an official record of the depository institution.

The facts of this case are like *Sweeney v. Resolution Trust Corp.*, 16 F.3d 1 (1st Cir. 1994),[4] where the borrowers brought an action against a bank alleging various lender liability claims, including 93A claims. Resolution Trust Corporation became the receiver of the bank. The First Circuit held that the *D'Oench, Duhme* doctrine "bars affirmative claims, whether sounding in contract or tort, when they are premised on an unwritten agreement." *Sweeney*, at 4, *citing Timberland Design, Inc. v. First Service Bank for Savs.*, 932 F.2d 46 (1st Cir.1991). "The mere fact that the [borrowers] relied in good faith on an unwritten agreement is not enough" to subject the FDIC to liability under the claims premised on the unwritten agreement. *Id.* at 5.

■ The Holts' claim that the officers of the New Bank of New England orally agreed immediately to advance $190,000 upon the execution of the $700,000 mortgages "constitutes the very kind of an assertion that the D'Oench doctrine and 12 U.S.C. § 1823(e) proscribe." *Resolution Trust Corp. v. Carr*, 13 F.3d 425, 429 (1st Cir.1993). "The FDIC is protected from unrecorded or oral agreements that are not reflected in one of its insured bank's records." *Id.* at 428. The purpose of the *D'Oench* doctrine is "to protect the FDIC from alleged oral agreements that are not part of the loan records." *Id.* at 429.

## 2. *Existence of A Written Contract*

■ The ruin of the forlorn hope leads the Holts to advance the argument that the $700,00 mortgages are themselves the written contracts upon which the FDIC can be charged. The Bankruptcy Court held that no such contract arose.

■ A mortgage is a conveyance of an interest in real estate to secure an obligation owed the mortgagee. *See Perry v. Miller*, 330 Mass. 261, 263, 112 N.E.2d 805 (1953). Generally, the obligation secured by the mortgage is delineated in a promissory note or separate written instrument that governs the terms of the obligation. *See* 28 Arthur L. Eno, Jr. & William V. Hovey, *Massachusetts Practice: Real Estate Law* § 9.3 (1995). A mortgage is unenforceable if the obligation the mortgage secures is unenforceable. Therefore, if the promissory note is not supported by consideration, the mortgage is not enforceable. *See Saunders v. Dunn*, 175 Mass. 164, 165, 55 N.E. 893 (1900) (holding that a mortgage is not enforceable if the underlying promissory note is without consideration). In this case, there is no separate promissory note or separate written instrument regarding the terms of the obligation. The terms of the promissory note are contained in the $700,000 mortgages. Whether a document constitutes a contract is a question of law. *Schwanbeck v. Federal–Mogul Corp.*, 31 Mass.App.Ct. 390, 406, 578 N.E.2d 789 (1991), *modified* 412 Mass. 703, 709–10, 592 N.E.2d 1289 (1992) (whether a writing constitutes a contract is a question of law where a writing is required by the Statute of Frauds). Thus, this Court may determine whether the underlying obligation is supported by consideration, thereby creating a valid contract.

■ Under Massachusetts law, recital in a written instrument that it is signed under

---

**4.** Pursuant to 12 U.S.C. § 1441a(b)(4), the Resolution Trust Corporation possesses the same powers and rights as are available to the FDIC. Therefore, section 1823(e) applies equally to the FDIC and Resolution Trust Corporation. Case law addressing the application of this provision to the FDIC and Resolution Trust Corporation is interchangeable. *See United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1328 (6th Cir.1993).

seal is sufficient to give the instrument the legal effect of a sealed instrument. Mass. Gen. Laws ch. 4, § 9A. The signing of a document under seal is adequate consideration to support a valid agreement. *See* 14 Alperin and Shubow, *Massachusetts Practice* § 7.25 (3d ed.). The $700,000 mortgages are signed under seal thereby importing sufficient consideration to support the promise of advancements.[5]

### 3. *Terms of the Contract*

The interpretation of a contract is a question of law unless the contract is ambiguous. *See, e.g. Coll* at 1122. If it is ambiguous, then there is an issue of fact for the jury. *Id.* Language is ambiguous "where an agreement's terms are inconsistent on their face or where the phraseology can support reasonable difference[s] of opinion as to the meaning of the words employed and obligations undertaken." *Id.* at 1122 (*quoting Rey v. Lafferty*, 990 F.2d 1379, 1384 [1st Cir.], *cert. denied*, 510 U.S. 828, 114 S.Ct. 94, 126 L.Ed.2d 61 [1993]). The ambiguity must exist in the language of the agreement.

There is no ambiguity in the language of the $700,000 mortgages. The language clearly indicates that the New Bank of New England was agreeing to make advancements to the Holts for an amount equal to the difference between $700,000 and the outstanding principal balance due on the $400,-000 Note (4/28/86 Note) and the $150,000 Note (12/13/90 Note). The New Bank of New England and the Holts thus executed an open-ended mortgage which secures future advances up to the amount of the mortgage. This is appropriate under Massachusetts law.

Mass. Gen. L. ch. 183, § 28A & 28B; *see Everett Credit Union v. Allied Ambulance Services, Inc.*, 12 Mass.App.Ct. 343, 346, 424 N.E.2d 1142 (1981) (a mortgage may secure future advances). The $700,000 mortgages envision future advances, but the terms of such advances are not specified.[6]

Parol evidence is admissible to interpret the terms of an unintegrated or partially integrated agreement. *See, Coll* at 1122. "Documents that characteristically embody obligations on only one side, such as deeds and promissory notes, are not usually regarded as complete integrations," E. Allan Farnsworth, *Farnsworth on Contracts* § 7.3 at 205 (1990) and, therefore, suggest that parol evidence ought be considered. *See Ryder v. Williams*, 29 Mass.App.Ct. 146, 149–50, 558 N.E.2d 1134. The Holts, however, point to no evidence in the record to establish the existence of an agreement by the New Bank of New England immediately to lend $190,000 to the Holts upon the execution of the $700,000 mortgages. Thus the Holts' claim that the language of the $700,000 mortgages requires immediate advancement of $190,000 evaporates when measured against the language of the $700,000 mortgages as a whole.

Were this not enough, the Court notes that no evidence is offered by the Holts to establish that the FDIC and RECOLL refused to make advancements under the $700,000 mortgages. In fact, evidence has been submitted by the FDIC of payment of outstanding real estate taxes. Thus, even were the Holts labored construction to be adopted, there is here no adequate evidence of breach.

---

5. The mortgages recite as follows:
"Witness the execution hereof under seal this 21st day of March 1991."
*See* Exhibit 4(A), (B).

6. Jeffrey Nolan, a loan recovery officer for RECOLL who worked on the Holts credit file from August, 1991 to December 1, 1993, stated in his deposition that "in my lending career sometimes you would file a mortgage bigger than the debt so that if you were to extend additional credit in the future you would not have to refile another mortgage." Dep. Nolan at 42. Nolan further states that RECOLL asked their attorney if they would have any liability based on Mr. Holt's claim that the $700,000 mortgages were execut-

ed as part of an agreement with the New Bank of New England for the advancement of funds for real estate taxes. *Id.* at 43–44. An internal memorandum by Jeffrey Nolan dated September 25, 1991 states that "Holt claims that the former Account Officer, Bob Rivet, agreed to lend him approximately $190M in new funds for building improvements and carrying costs so that he could prepare the properties for sale as condominium units." Exhibit 14. Mr. Holt, however, testified in his deposition that the purpose of the $700,000 mortgages was to pay outstanding real estate taxes. Dep. Francis Holt at 44–46 (Nov. 17, 1995).

### 4. *Enforceability*

A contract regarding the conveyance of an interest in real estate must be in writing and signed by the party to be charged in order to be enforceable under the Massachusetts Statute of Frauds. Mass. Gen. L. ch. 259, § 1; *see also* 2 Arthur L. Corbin, *Corbin on Contracts,* ch. 17 § 403 (1950). This Court has already held that these $700,000 mortgages are contracts. A mortgage contract is a conveyance of an interest in real estate. As the $700,000 mortgages are not signed by the New Bank of New England, the FDIC cannot be subject to suit based on them.

### CONCLUSION

For these reasons, after consideration of the entire record, this Court *AFFIRMS* the decision of the Bankruptcy Court granting summary judgment for the FDIC and RE-COLL on all Counts of the Adversary Complaint of the Holts.