Botsford, J.
Plaintiff, Aberjona Nursing Center, Inc. (Aberjona, or the nursing home) is a Massachusetts corporation which owns and operates a skilled nursing facility or nursing home in Winchester, Massachusetts. The defendant, Charles E. Porter, Jr. (Porter) is the trustee of the Norfolk Road Trust and the Porter Family Trust.[2] In its complaint, Aberjona contends that Porter failed to adhere to a promise to pay Aberjona for the care of his aunt, Philomena Porter (Mrs. Porter), who was a resident of the nursing home from March 6, 1995 until her death on May 5, 1999. The complaint contains four counts: Count I seeks authorization to foreclose a mortgage against Norfolk Road Trust;[3] Count II alleges breach of contract; Count III is for quantum meruit; and Count IV alleges failure to abide by the terms of a promissory note. Aberjona now moves for summary judgment on all counts of the complaint. Porter opposes Aberjona’s motion, moves for summary judgment on Count III of the complaint, and requests that the court limit damages to the amount of the promissory note. For the reasons set forth below, Aberjona’s motion is allowed in part and denied in part, and Porter’s motion is also allowed in part and denied in part.
BACKGROUND
The record reveals the following undisputed facts. Mrs. Porter was a resident of Aberjona from March 6, 1995 — three days following the death of her late husband, Frederick J. Porter — until her own death on May 5, 1999. The defendant Porter is Mrs. Porter’s nephew by marriage; he is the son of Frederick J. Porter’s brother. At all times relevant to this case, Porter has been the trustee of both the Norfolk Road Trust and the Porter Family Trust, both of which were created under separate trust instruments dated February 15, 1991.
*133 The Porter Family Trust owns the entire beneficial interest of the Norfolk Road Trust. By means of a deed dated February 15, 1991, Mrs. Porter and her husband transferred their home at 8 Norfolk Road, Winchester, Massachusetts to the Norfolk Road Trust. Pursuant to Article II, B.l of the Porter Family Trust, its principal and income is to be paid for the benefit of Mrs. Porter at the discretion of the trustee. Porter became the trustee of the Porter Family Trust as well as the Norfolk Road Trust following the death of Frederick Porter on March 3, 1995.
From Mrs. Porter’s admission to Aberjona on March 6, 1995 until April 22, 1995, her care was paid for by the Medicare program. As of April 23, 1995, Mrs. Porter became a private paying resident. Lisa Jackson, the controller of Aberjona, discussed payment for Mrs. Porter’s care with Porter on various occasions in 1995 and 1996; Porter stated to Jackson that he was responsible for Mrs. Porter’s financial affairs, that in his capacity as a trustee he would pay Aberjona’s bill, and that Mrs. Porter’s home in Winchester would be sold and the proceeds used to pay the bill.[4]
In a letter to Jackson dated March 16, 1996, Porter repeated that he was responsible for all matters relating to the health, safely, well being and maintenance of Mrs. Porter through a sole power of attorney, and that Aberjona should direct all communications concerning Mrs. Porter to him. He also enclosed a check for $250 to be deposited in Mrs. Porter’s personal needs account. Porter wrote a second letter to Jackson dated a week later, March 23, 1996. The letter states in relevant part as follows:
Enclosed please find a check payable to your order in the amount of $20,000.00 to be applied toward the outstanding balance of Philomena Porter, as previously agreed telephonically . . .
Again, I wish to thank you and the Aberjona Nursing Center for allowing us the time to fully explore any and all post death planning strategies in relation to Philomena Porter’s care at your facility. As agreed, I will notify you when Philomena Porter’s status from private pay to Medicaid is indicated by exhaustion of all private funds.
As agreed telephonically, Aberjona Nursing Center guarantees residency for Philomena Porter until her demise after the transition from private pay to Medicaid status after exhaustion of private funds. Aberjona Nursing Center also guarantees that Philomena Porter will receive for life the exact same high level of care under Medicaid status in the eventual future that she currently receives as a private pay resident. . .
In approximately the spring of 1996, Aberjona retained a law firm to collect or arrange for the payment of Mrs. Porter’s nursing home care.[5] Michael Brust, one of the law firm’s attorneys representing Aberjona, in this effort, had several telephone conversations with Porter, who told Brust that in his (Porter’s) capacity as trustee of the Norfolk Road Trust and the Porter Family Trust, he would pay the past and future nursing home bills of Mrs. Porter.[6] To formalize the commitment, the attorney then prepared a promissory note and mortgage in connection with Mrs. Porter’s account, and presented them to Porter (who is himself an attorney). The note provides that Porter, as trustee of the Norfolk Road Trust, promises to pay Aberjona the sum of $71,016.00, on or before June 30, 1997. The mortgage in turn states that Porter, as trustee of the Norfolk Road Trust, grants a mortgage on the Norfolk Road Trust property at 8 Norfolk Road (Mrs. Porter’s former home) to Aberjona
... to secure the payment of $71,016.00 . . . payable as provided in note of even date, as well as any future sums due to Mortgagee from Mortgagor and from Philomena Porter . . .
(Emphasis supplied.)
Porter has not made any payment on the note, and in fact has made no payments to Aberjona since April 1, 1996. Mrs. Porter remained a resident of the nursing home until her death on May 5, 1999. As of that date, the final balance on Mrs. Porter’s account at Aberjona was $290,248.00.
Discussion
Summary judgment shall be granted when there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that, as a result, the moving party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of genuine issues of material fact. Id. at 17. The moving party cannot defeat a motion for summary judgment by resting on his pleadings and mere assertions of disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989).
I. Mortgage Foreclosure
On March 17, 1998, the court entered judgment on Count I of Aberjona’s complaint, thereby authorizing foreclosure of the mortgage granted by Porter on the 8 Norfolk Road property.
What remains open is the question of what amount of debt the mortgage secures. There is no dispute that the mortgage covers the face amount of the promissory note which Porter signed, viz., $71,016.00. Aberjona points to the provision in the mortgage instrument stating that the mortgage also secures “any future sums due” to Aberjona from Porter and from Mrs. *134 Porter, and argues that the mortgage secures the full amount owed for Mrs. Porter’s care, which Aberjona states is $290,248.00. Porter contends that because the note contains no language imposing liability for future amounts, and because Porter states in his affidavit that he never intended to be responsible for future debts of Mrs. Porter, the mortgage provision dealing with future liability is of no effect.
Porter’s contention deserves rejection. The mortgage instrument’s “dragnet” clause by its terms applies to future amounts that Porter, in his capacity as trustee, may owe for Mrs. Porter. “The guiding principle in construction of a dragnet clause in a mortgage is the determination of the intent of the parties in view of the particular circumstances and the language employed in the mortgage ... A principle which has been applied by a number of courts to aid in determining intent is that a dragnet clause will generally be construed to apply to ‘only debts of the general kind of those specifically secured’ or which bear a ‘sufficiently close relationship to the original indebtedness that the consent of the debtor can be inferred . . .’ ” Financial Acceptance Corp. v. Garvey, 6 Mass.App. 610, 613 (1978) (citations omitted; emphasis supplied). Here, the language in the mortgage is extremely clear; the mortgage is to secure the specific amount of the contemporaneously executed note, “as well as any future sums due . . . from [Porter] and from Philomena Porter.” Further, it is obvious that the future “sums” or debts being secured are of precisely the same nature as the specific debt described in the mortgage: bills for the nursing home care provided by Aberjona to Mrs. Porter. Finally, Porter, an attorney, signed the note and the mortgage on the same day at the same time.
Porter’s wholly self-serving affidavit, stating that he did not intend to be responsible for debts related to Mrs. Porter’s future care, does not assist him. The circumstances surrounding the execution of the note and the mortgage included these: as of July 1996, Mrs. Porter had been a resident of the nursing home on a continuous basis for approximately sixteen months; Medicare had paid for her care for a short time at the outset, but then she became a private paying patient and Porter expressly identified himself as the sole individual responsible for making all decisions about her in relation to Aberjona; four months earlier, in March 1996, Porter had forwarded a check for $20,000 to defray some of the cost of Mrs. Porter’s care; and at the same time had written a letter which clearly reflected his appreciation that he had the responsibility to pay Aberjona what was due for his aunt’s care while she remained a private paying patient, not enrolled in the Medicaid program. The only reasonable inference to draw from the actual text of the mortgage, when considered in light of these circumstances, is that Porter intended what the words of the mortgage instrument say, that is, that the mortgage would cover future amounts due to Aberjona for Mrs. Porter’s care.
As a general rule, mortgages which cover future debts are valid, Everett Credit Union v. Allied Ambulance Servs., Inc., 12 Mass.App.Ct. 343, 346 (1981), even where there is no corresponding note making reference to future advances. See, e.g., Bennett v. Worcester County Nat’l Bank, 350 Mass. 64, 67 (1966). While the parties’ intent is certainly a factor, principles of fairness and equity serve as guiding principles in interpreting dragnet clauses in mortgages. See Everett Credit Union, supra, 12 Mass.App.Ct. at 347. In this case, the equities weigh heavily in favor of Aberjona. The nursing home took care of Mrs. Porter for over four years while being paid only $20,000 by Porter. There is no claim here that the care was inadequate in any way. Aberjona is entitled to be compensated for the services it provided. That Porter may have intended the Medicaid program to cover his aunt’s stay at Aberjona does not mean that Aberjona must provide the services for free; responsibility for pursuing Medicaid coverage was Porter’s, not Aberjona’s.
In sum, I conclude that the mortgage granted by Porter secures the full amount owed to Aberjona on and after the date of the mortgage, not simply the face amount of the promissory note.
II. Breach of Contract
Aberjona’s claim is that in his capacity as trustee of both the Norfolk Road and Porter Family Trusts, Porter promised Aberjona to pay for all the care it provided for Mrs. Porter, and that promise is an enforceable contract which Porter has breached. I agree.
The summary judgment record contains uncontro-verted affidavits which state that on several occasions, Porter stated that in his capacity as trustee he was responsible for paying the bills for Mrs. Porter’s nursing home care. (See affidavit of Lisa Jackson; affidavit of Michael Brust.) Porter argues, however, that this promise or agreement to pay generally for all the nursing home care is not binding on him because it was oral and not in writing. His position is that any liability he may have is limited to the face amount of the promissory note.
An oral promise to pay for the debt of another is unenforceable under the statute of frauds. G.L.c. 259, §1. The statute provides:
No action shall be brought: . . . second, to charge a person upon a special promise to answer for the debt, default or misdoings of another; . . . unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.
The purpose of the statute of frauds is merely to require written evidence of the obligation signed by the party to be charged. See Lawley & Son Corp. v. Buff, 230 Mass. 21, 24 (1918). Porter’s letters of March 16 and 23, 1996, considered together, and together with *135 the promissory note and mortgage Porter executed on July 26, 1996, clearly satisfy this test, and bind Porter to his oral promise to pay for all Mrs. Porter’s nursing home care. In these documents, Porter (1) states that he has sole responsibility for making all decisions relating to Mrs. Porter; (2) acknowledges that Mrs. Porter is a private paying patient until she might become qualified as a Medicaid participant; and (3) further acknowledges, as evidenced by the $20,000 check he signed and sent in March 1996 as well as by the promissory note and associated mortgage he executed in July 1996, that as trustee he was responsible for making the requisite payments on Mrs. Porter’s behalf while she remained a private pay patient. In these circumstances, Aberjona is not barred from enforcing Porter’s agreement to pay generally for his aunt’s nursing home care by the statute of frauds. Porter’s contention that his liability is limited to the face amount of the one note he executed on July 26, 1996, accordingly fails.
There is no dispute that Porter has not paid the full amount due Aberjona for providing four years of nursing home care to Mrs. Porter, and therefore there can be no dispute that Porter has breached his contract with Aberjona. Abérjona has submitted evidence that as of the date of Mrs. Porter’s death the amount due came to $290,248. No evidence proffered by Porter contradicts or calls this sum into question; his objection is limited to the argument, which I have rejected, that he is legally responsible to pay only the amount due under the promissory note. Accordingly, I conclude that Aberjona is entitled to recover $290,248 in damages on account of the breach of contract.
Because there was a valid contract between Aberjona and Porter, Aberjona’s claim of quantum meruit should be dismissed; Porter is entitled to summary judgment on Count III.[7]
ORDER
For the foregoing reasons, it is hereby ORDERED that plaintiff Aberjona Nursing Center, Inc.’s motion for summary judgment be ALLOWED with respect to Counts II and IV of the amended complaint, and DENIED as to Count III. It is further ORDERED that the defendant Charles Porter, Trustee’s motion for partial summary judgment be ALLOWED with respect to Count m of the complaint, and otherwise DENIED. Counsel are to contact Assistant Clerk Arthur DeG-uglielmo at (617) 494-4291, to set up a conference on the issue of final judgment in this case.

Porter is named as a defendant solely in his capacity as trustee of the two trusts. Accordingly, all references to Porter in this memorandum of decision are to him in his representative capacity, not individually.

On March 17, 1998, the Court entered a judgment authorizing this foreclosure; however, the exact amount due to the Plaintiff is undetermined.

The statements of Porter which are described here are taken from the affidavit of Lisa Jackson, controller of Aberjona from 1994 to August 1996. Porter has not submitted any information disputing the statements. The Jackson affidavit indicates that the statements were made in 1995 and 1996.

Although not stated directly, the summary judgment materials submitted by Aberjona imply that at the time Porter sent the checkfor $20,000 to the nursing home (March 1996), the check did not cover the total amount due. I draw this inference from the fact that the note which Porter signed in July 1996 was for $71,000 and change, which presumably represented the outstanding bill at that time; it is not likely that Mrs. Porter’s care between March 23 and July 26, 1996 cost $71,000.

An affidavit of Michael Brust is included in the summary judgment materials. Again, Porter has not submitted any material disputing that he made the statements attributed to him to Michael Brust.

The conclusion that Porter in his capacity as trustee entered into a valid and binding contract to pay for all the nursing home care provided to his aunt makes it essentially unnecessary to address the separate claim that Porter as trustee of the Norfolk Road Trust is liable on the note, and obligated to pay Aberjona $71,016 pursuant to that instrument. However, it appears that there is no dispute concerning Porter’s liability under this note. Accordingly, I will grant Aberjona summary judgment in its favor on Count IV of the complaint.